George Mackubin v. Commissioner.
Mackubin v. Commissioner
Docket No. 12566.
United States Tax Court
1948 Tax Ct. Memo LEXIS 197; 7 T.C.M. (CCH) 269; T.C.M. (RIA) 48072; May 5, 1948
*197 John W. Cable, III, Esq., American Bldg., Baltimore, Md., and William F. Malone, Esq., for the petitioner. Paul E. Waring, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $114.32 in petitioner's income tax for 1943, in part by disallowing the deduction of a long-term loss on the liquidation of a corporation of which petitioner was a shareholder. Petitioner contends that the loss is deductible in 1943 by virtue of a final liquidating distribution in that year. Respondent argues that as practically all corporate assets were distributed in 1936, the loss could have been computed with reasonable certainty then and is not deductible in 1943. Findings of Fact This proceeding was presented by a stipulation and exhibits, hereby incorporated as findings of fact, and by oral testimony. From this record it appears that: Petitioner, a resident of Baltimore, Maryland, filed his income and victory tax return for 1943 with the collector of internal revenue for the district of Maryland. Until retirement in 1940, he was a member of the investment banking firm of Mackubin, Legg & Co., of Baltimore. *198 In 1923 petitioner acquired 250 shares of stock in the American Conservation Service Corporation (hereafter called the corporation), at a cost of $15,434.46. This corporation, organized in 1918 under the laws of the State of Washington with principal office at Chicago, Illinois, was engaged in the business of patented processes. It paid a regular dividend of $5 a share for some years; reported income of over $20,000 in 1926, but less thereafter, and on October 9, 1931, its directors resolved to liquidate. In that year its charter was surrendered and business operations discontinued. On October 10, 1931, the corporation paid a liquidating cash dividend of $29,652, representing a distribution of $12 on each of its 2,471 outstanding shares. It paid a further liquidating dividend of $2.50 a share in 1934; of $1 a share in 1936; of 26.88 cents a share in 1942, and of 27.045 cents a share on December 24, 1943. By these distributions petitioner received an aggregate of $4,009.81 on his 250 shares. In paying the dividend of 1936, the corporation's president advised shareholders by letter that all assets had been liquidated except a patent, which might have some value in the future, although *199 efforts to realize a worthwhile sum for it had not been successful, and that there remained about $700 cash which would be distributed with any sale proceeds of the patent. In transmitting the 26.88 cents dividend of 1942, the corporation's secretary advised shareholders that: "This dividend is subject only to being increased to the extent of the amount of any possible checks returned because of inability to locate the particular stockholders. "This dividend constitutes the final distribution of all of the remaining assets and cash of the American Conservation Service Corporation, and completes the liquidation of the company." In fact, the corporation still owned 7 common shares of the Borden Company, 19-16/20 common shares of Southwestern Public Service Company, (both listed on the New York Curb Exchange) and cash deposits which on January 1, 1943, amounted to $1,060.47, and against which checks aggregating $830.10 had been drawn but not cashed by shareholders. A liquidating director having ascertained that the two stocks were registered in the corporation's name (one share in its president's name) and being unable to locate any certificates, arranged the procurement of new *200 certificates in December, 1943, and in the middle of that month the corporation sold the two stocks, realizing $454.18. On December 24, 1943, it distributed the 27.045 cents dividend, aggregating $668.37. In a letter of transmittal the corporation's secretary wrote the shareholders that the enclosed checks: "* * * constitute final distribution of all of the remaining assets of the American Conservation Service Corporation and completes the liquidation of this company." But the corporation still had on deposit $865.87 at the close of 1943, $383.62 at the close of 1944, $383.35 at the close of 1945, and $352.69 at the close of 1947. This money was retained to meet uncashed checks which the corporation had issued. If unclaimed, the cash will be eventually distributed. The corporation filed income tax returns for each of the years 1931-1942, reporting that it was inoperative and had no income. For 1936 it reported losses of $7,756.08 on the sale of stocks, and dividends of $113.20, of which $10.80 was paid by the Borden Company. For 1943 it filed a return, showing a net loss on the sale of the two stocks and a net income of $22.38. Petitioner still holds his certificates for 250 *201 of the corporation's shares. He and the agent by whom his income tax returns were prepared had no knowledge of the corporation's assets and progress of the liquidation except that derived from letters transmitting the liquidating dividends. On his income tax return for 1943 petitioner claimed a long-term capital loss of $5,712.32 on shares of the corporation. The Commissioner disallowed any deduction on the ground that the investment "was worthless prior to 1943". Opinion Respondent defends disallowance of the deduction, arguing that it should have been taken in 1936 as liquidation was practically completed in that year and the value of the corporation's remaining assets could then have been determined. He cites Commissioner v. Winthrop ( C.C.A., 2nd Cir.), 98 Fed. (2d) 74, as controlling, wherein the shareholder of a liquidating corporation was permitted a deduction in 1932 because "the amount of his loss was then determinable with reasonable certainty", although the corporation retained cash to meet liabilities and expenses and in 1934 made a further distribution of 20 cents a share. In so holding the court said: "* * * When * * *, the only remaining asset of *202 the company is money, and the disbursements to be charged against it are known with enough certainty to make sure what the final dividend will be, we think that the liquidation is complete within the intendment of the provisions relating to loss on the investment. * * *" The decision in Dresser v. United States, 74 Ct. Cl. 55; 55 Fed. (2d) 499, was distinguished because: "* * * There the corporation in process of liquidation had tangible assets which had not been converted into cash and intangible assets the value of which had not been determined. * * *" In cases subsequent to these decisions certainty of amount has been stressed as essential to support a loss deduction in a year prior to a final liquidating distribution even if cash retained by the corporation is relatively small. In Arthur Webster, 6 T.C. 1183, the taxpayer's loss from investment in a trust which distributed $17,000 in liquidation in 1936 and withheld $1,583 in cash, partly impounded, until distributed in 1940, was held deductible in the latter year, this Court saying: "* * * 'The general requirement that losses be deducted in the year in which they are sustained calls *203 for a practical, not a legal, test.' Lucas v. American Code Co., 280 U.S. 445. * * * although there was expectation of some recovery, it could not be ascertained with reasonable certainty what the amount of such recovery would be. * * *" See also Selma Wertheimer et al., Executors, 31 BTA 407. But this rule is not applied with such rigidity that the liquidating corporation's retention of a nominal amount in cash to meet contingencies defeats the shareholder's right to deduct a loss. G.C.M. 22822, 1941-2, C.B. 126. Applying the practical test to the facts here established, we do not find that the amount of petitioner's loss was reasonably certain in 1936. Besides cash the corporation still held a patent which might be sold and a few shares of listed stocks which had not been converted into cash. Obviously an estimate of future distributions would have been only a guess in that year. In 1942 a small additional distribution was made, but the corporation still held the stocks; the evidence shows nothing further about the patent. The stocks were sold in 1943 (the year in which petitioner seeks the deduction), following arrangements to replace certificates *204 lost. After a distribution of $668.37, the corporation still retained $865.87 to meet uncashed checks which it had issued, and at the close of 1947, $352.69 remained to its credit and will be distributed if checks are not cashed. Respondent urges that as neither the liquidator nor petitioner knew anything about the stocks in 1936, the distribution then, or certainly that in 1942, was intended as final and should be treated as the event fixing the year of loss. The liquidator testified that he could not remember when he first learned that the corporation owned the shares sold in 1943, but we note that a small dividend from the Borden Company was reported on the 1936 return. In any event we can not accept respondent's argument, for a loss is not determined by the subjective test of information or belief held by the liquidator or the taxpayer, but rather by an identifiable event which fixes its occurrence and amount with reasonable certainty. Boehm v. Commissioner, 326 U.S. 287. A corporation could not advance the shareholder's deduction year by notice that a dividend was in final liquidation if in fact there were additional assets available for distribution. Examining *205 the evidence as a whole, we are of opinion that petitioner correctly deducted the loss in 1943. Prior to that year the corporation had not converted all assets into cash; in fact, did not then have certificates for the shares which it sold in 1943. After that year the petty cash retained was intended merely for the covering of uncashed checks previously issued. While reason for the corporation's delay in making distribution is not apparent, there was no litigation by shareholders as in Charles A. Dana, 6 T.C. 177. The delay is attributable entirely to the liquidator, and his policy rendered a loss determination with reasonable certainty as to amount impossible before 1943. The Commissioner erred in disallowing the deduction claimed. Decision will be entered under Rule 50.