## BOEHM *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 69.   Argued October 19, 1945.—Decided November 13, 1945.

*Mr. Louis Boehm,* with whom *Mr. B. D. Fischman* was on the brief, for petitioner.

*Mr. Walter J. Cummings, Jr.,* with whom *Acting Solicitor General Judson, Assistant Attorney General Clark, Messrs. Sewall Key, I. Henry Kutz* and *Miss Helen R. Carloss* were on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

We are met here with the problem of whether the Tax Court properly found that certain corporate stock did not become worthless in 1937, thereby precluding the petitioning taxpayer from claiming a deductible loss in that year under § 23 (e) of the Revenue Act of 1936.[1]

The facts, which are stipulated, show that the taxpayer in 1929 bought 1,100 shares of Class A stock of the Hartman Corporation for $32,440. This corporation had been formed to acquire the capital stock of an Illinois corporation, and its affiliates, engaged in the business of selling furniture, carpets and household goods.

In April, 1932, the Hartman Corporation sent its stockholders a letter reporting that the current business depression had caused shrinkage of sales, decline in worth of assets[2] and unprecedented credit and corporate losses. Another letter sent the following month informed them that business had not shown any improvement although counteracting measures were being taken. Then on June 16, 1932, a federal court in Illinois appointed equity receivers upon the allegations of a creditor, which were ad-

---

[1] 49 Stat. 1648, 1659; 26 U. S. C. § 23 (e).

[2] The balance sheet as of December 31, 1931, which accompanied this letter, showed assets and liabilities of $15,401,097.97 and a total net worth of $9,410,659.50.

mitted to be true by the Hartman Corporation, that the company had sustained large liquidating and operating losses from 1930 to 1932.[3]

Subsequently, on December 16, 1932, a stockholders' derivative action, the so-called Graham suit, was instituted in a New York court against the Hartman Corporation and nine members of its board of directors, some of whom were also officers. This suit was brought by the taxpayer and eight others on behalf of themselves as stockholders[4] and on behalf of the corporation and all other stockholders who might join with them in the suit. The defendants were charged with waste, extravagance, mismanagement, neglect and fraudulent violation of their duties as officers and directors, "to the great damage, loss and prejudice of the Corporation and its stockholders." The plaintiffs sought (1) to compel the defendants to account to the corporation for their official conduct, (2) to compel the defendants to pay to the corporation's treasury the amount of loss resulting from their alleged wrongful acts, (3) to secure from the corporation suitable allowance for counsel fees and other costs incurred in the suit and (4) to secure such other relief as might be just, equitable and proper.

---

[3] The creditor's bill of complaint stated that Hartman Corporation and its subsidiaries in 1931 sustained losses of $761,648 from closing stores and losses of $1,150,000 from necessary liquidation. It was further alleged that the corporation sustained operating losses in 1930 in the amount of $1,830,000; in 1931, $2,076,266; from January, 1932, to June 16, 1932, $400,000. After stating that the company was being operated at a great financial loss and that it was unable to meet and pay its obligations, the bill concluded by alleging that the assets and properties were of great value and that if they were administered through a receivership they would be sufficient to pay all of the corporation's liabilities, leaving a surplus for the stockholders.

[4] These nine plaintiffs represented 4,407 of the approximately 60,000 Class A shares outstanding and 115½ of the more than 335,000 Class B shares outstanding.

The Hartman Corporation ceased operations under the receivers on May 26, 1933, when a new company, Hartman's Inc., bought at a bankruptcy sale all of the assets of Hartman Corporation's subsidiary company for $501,000. The stock of the new company was issued to the subsidiary's creditors. Stockholders of Hartman Corporation were also given the right to subscribe to the stock and debentures of the new company, but the taxpayer did not exercise that right.

The receivers filed their first report in the federal court on August 10, 1934, in which it appeared that Hartman Corporation had outstanding claims of $707,430.67 and assets of only $39,593.13 in cash and the pending Graham suit. It does not appear whether the suit was listed as having any value. The identical situation was apparent in the second report, filed on July 11, 1935, except that the cash assets had fallen to $27,192.51. A 4% dividend to creditors was also approved at that time. On September 30, 1937, the final report was made. Outstanding claims of $630,574.57 were then reported; the sole asset was cash in the amount of $1,909.94, which was then distributed to creditors after deduction of receivership costs.

In the meantime the Graham suit was slowly progressing. From 1933 to 1936, inclusive, extensive examinations were made of certain defendants, the plaintiffs expending some $2,800 in connection therewith exclusive of counsel fees. But the case never reached trial. On February 27, 1937, a settlement was consummated whereby the defendants paid the taxpayer and her eight co-plaintiffs the sum of $50,000 in full settlement and discharge of their claims and the cause of action. The taxpayer's share of the settlement, after payment of expenses, amounted to $12,500.

The taxpayer had tried unsuccessfully in her 1934 income tax return to claim a deduction from gross income in the amount of $32,302 as a loss due to the worthlessness

of her 1,100 shares of stock. The Commissioner denied the deduction on the ground that the stock had not become worthless during 1934; apparently no appeal was taken from this determination. Then in 1937 the taxpayer claimed a deduction from gross income in the amount of $19,940, being the difference between the $32,440 purchase price of the stock and the $12,500 received pursuant to the settlement. The Commissioner again denied the deduction, this time on the ground that the stock had not become worthless during 1937. The Tax Court sustained his action and the court below affirmed as to this point.[5] 146 F. 2d 553. We granted certiorari because of an alleged inconsistency with *Smith* v. *Helvering*, 78 U. S. App. D. C. 342, 141 F. 2d 529, as to the proper test to be used in determining the year in which a deductible loss is sustained.

Section 23 (e) of the Revenue Act of 1936, like its identical counterparts in many preceding Revenue Acts, provides that in computing net income for income tax purposes there shall be allowed as deductions "losses sustained during the taxable year and not compensated for by insurance or otherwise." Treasury regulations, in effect prior to and at the time of the adoption of the 1936 Act and repeated thereafter, have consistently interpreted § 23 (e) to mean that deductible losses "must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed." [6] Such regulations, being

---

[5] The Commissioner also included in the taxpayer's 1937 gross income the $12,500 received in the settlement and the Tax Court sustained his action. But the court below reversed, holding that the $12,500 must be regarded as a capital item in reduction of loss rather than as income. This point is not now before us.

[6] Treasury Regulations 94, Art. 23 (e)–1, under the Revenue Act of 1936. Identical language is contained in Regulations 86, Art. 23 (e)–1, under the Revenue Act of 1934; Regulations 101, Art. 23 (e)–1, under the Revenue Act of 1938; Regulations 103, § 19.23 (e)–1, under

"long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law." *Helvering* v. *Winmill,* 305 U. S. 79, 83.

*First.* The taxpayer claims that a subjective rather than an objective test is to be employed in determining whether corporate stock became worthless during a particular year within the meaning of § 23 (e). This subjective test is said to depend upon the taxpayer's reasonable and honest belief as to worthlessness, supported by the taxpayer's overt acts and conduct in connection therewith.

But the plain language of the statute and of the Treasury interpretations having the force of law repels the use of such a subjective factor as the controlling or sole criterion. Section 23 (e) itself speaks of losses "sustained during the taxable year." The regulations in turn refer to losses "actually sustained during the taxable period," as fixed by "identifiable events." [7] Such unmistakable phraseology compels the conclusion that a loss, to be deductible under § 23 (e), must have been sustained *in fact* during the taxable year. And a determination of whether a loss was in fact sustained in a particular year cannot fairly be made by confining the trier of facts to an examination of the taxpayer's beliefs and actions. Such an issue of necessity requires a practical approach, all pertinent facts and circumstances being open to inspection and consideration regardless of their objective or subjective nature. As this Court said in *Lucas* v. *American*

the Internal Revenue Code; and Regulations 111, § 29.23 (e)–1, under the Internal Revenue Code.

[7] Treasury Regulations 94, Art. 23 (e)–4, further makes clear that only losses in fact are deductible. Losses on stock due to shrinkage of value are allowable only to the extent "actually suffered when the stock is disposed of." And if, before being disposed of, the stock becomes worthless, its cost or other basis "is deductible by the owner for the taxable year in which the stock became worthless, provided a satisfactory showing is made of its worthlessness."

*Code Co.*, 280 U. S. 445, 449, "no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test."

The standard for determining the year for deduction of a loss is thus a flexible, practical one, varying according to the circumstances of each case. The taxpayer's attitude and conduct are not to be ignored, but to codify them as the decisive factor in every case is to surround the clear language of § 23 (e) and the Treasury interpretations with an atmosphere of unreality and to impose grave obstacles to efficient tax administration.

*Second.* The taxpayer contends that even under the practical, realistic test the stipulated facts demonstrate as a matter of law that the stock of the Hartman Corporation did not become worthless until 1937, when the stockholders' suit was settled. Hence it is claimed that the Tax Court erred in concluding that there was not a deductible loss in 1937 within the meaning of § 23 (e).

But the question of whether particular corporate stock did or did not become worthless during a given taxable year is purely a question of fact to be determined in the first instance by the Tax Court, the basic fact-finding and inference-making body. The circumstance that the facts in a particular case may be stipulated or undisputed does not make this issue any less factual in nature. The Tax Court is entitled to draw whatever inferences and conclusions it deems reasonable from such facts. And an appellate court is limited, under familiar doctrines, to a consideration of whether the decision of the Tax Court is "in accordance with law." 26 U. S. C. § 1141 (c) (1). If it is in accordance, it is immaterial that different inferences and conclusions might fairly be drawn from the undisputed facts. *Commissioner* v. *Scottish American Co.*, 323 U. S. 119.

Here it was the burden of the taxpayer to establish the fact that there was a deductible loss in 1937. *Burnet* v. *Houston*, 283 U. S. 223, 227. This burden was sought to be carried by means of the stipulation of facts. But the Tax Court, using the practical test previously discussed, found the stipulated facts "insufficient to establish that the stock had any value at the beginning of 1937 and became worthless during that year." It felt that such evidence "clearly shows that the stock was worthless prior to that year."

We are unable to say that the Tax Court's inferences and conclusions on this factual matter are so unreasonable from an evidentiary standpoint as to require a reversal of its judgment. The stipulation shows a succession of "identifiable events," occurring long before 1937, to justify the conclusion that the stock was worthless prior to the taxable year. The serious losses over a period of years, the receivership, the receivers' reports, the excess of liabilities over assets, the termination of operations and the bankruptcy sale of the assets of the principal subsidiary all lend credence to the Tax Court's judgment.[8] While the stockholders' suit was prosecuted against defendants of admitted "financial responsibility" and constituted an asset of the corporation until settled in 1937, the Tax Court felt that no substantial value to the suit had been shown. There was no evidence in the stipulation of the merits of the suit, the probability of recovery or any assurance of collection of an amount sufficient to pay the creditors' claims of more than $630,000 and to provide a sufficient surplus for stockholders so as to give any real value to their stock. The mere fact that the defendants were financially responsible does not necessarily inject any

---

[8] See, in general, 5 Mertens, Law of Federal Income Taxation, §§ 28.65 to 28.69; Lynch, "Losses Resulting From Stock Becoming Worthless—Deductibility Under Federal Income Tax Laws," 8 Fordham L. Rev. 199.

recognizable value into the suit from the stockholders' viewpoint. Hence it was reasonable to conclude that all value had departed from the stock prior to 1937 and that there was nothing left except a claim for damages against third parties for destruction of that value.

The taxpayer points to the consequences of error and other difficulties confronting one who in good faith tries to choose the proper year in which to claim a deduction. But these difficulties are inherent under the statute as now framed. Any desired remedy for such a situation, of course, lies with Congress rather than with the courts. It is beyond the judicial power to distort facts or to disregard legislative intent in order to provide equitable relief in a particular situation.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.