CHARLES A. DANA, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 5909.    Promulgated February 5, 1946.

*Benjamin Mahler, Esq.*, and *Max Rolnik, C. P. A.*, for the petitioner.
*Carl A. Stutsman, Jr., Esq.*, for the respondent.

### OPINION.

LEECH, *Judge*: This is another case presenting fundamentally the difficult question of when an admitted capital loss was sustained under section 23 (e), Internal Revenue Code.

Petitioner argues that the loss occurred in 1941, when, in accordance with a plan to completely liquidate Indian, he surrendered his shares in that company for cancellation in exchange for 65 cents per share. Respondent argues that the liquidation was not then completed,[1] and that, therefore, such "transaction * * * was not closed and completed during the year 1941" so as to support a loss in that year. He relies particularly on Regulations 103, section 19.23 (e)–1, and *Dresser* v. *United States,* 74 Ct. Cls. 55; 55 Fed. (2d) 499; certiorari denied, 287 U. S. 635. He bases his position on the facts that petitioner in later years received an additional 10 cents per share as the result of an independent appraisal proceeding instituted under sections 14:3–5 and 14:12–6 of the New Jersey Revised Statutes (1937) by dissenting stockholders, of whom petitioner was not one, to have the value of their shares appraised; and because, as the result of settlement of stockholders' derivative suits, to which petitioner was not a party, petitioner received an additional $1.99 per share in 1943.

The decision of the issue ultimately turns, we think, on whether the rule of *Dresser* v. *United States, supra,* is applicable, or that announced

---

[1] Sec. 115 (c), I. R. C.

in *Beekman Winthrop*, 36 B. T. A. 314; affd., 98 Fed. (2d) 74. In both of those cases losses of the same nature as that here were involved. In both cases the year in which the deduction was allowable turned upon the answer to the question of when a transaction was closed, as to the taxpayer, fixing his loss. The transaction was a corporate distribution in liquidation. In the *Dresser* case the corporation had tangible assets which had not been converted into cash and intangible assets the value of which had not been determined, when the liquidating distribution in question occurred. The Court of Claims held that such distribution was not a closed transaction as to the taxpayer. In the *Winthrop* case petitioner surrendered his stock in a corporation in the taxable year and then received a distribution in liquidation consisting of bonds of a definite market value and a liquidation certificate entitling him to a proportionate share in the final liquidating distribution. It was estimated that about 20 cents per share would be the amount of the final distribution. In a later year that amount was paid as a final distribution. We held that the earlier distribution in 1932 constituted a closed transaction as to the taxpayer, since, as to him, the liquidation of the corporation was, for practical purposes, complete.

Respondent concedes that the fact that dissenting stockholders proceeded under the New Jersey law for an independent appraisal of the value of their Indian stock and the payment of that value to them did not give the petitioner, who did not dissent and join in such proceedings, any possible interest therein. Though technically a liquidation, the 1941 transaction had many of the aspects of a sale. Sec. 14:3–5, New Jersey Revised Statutes of 1937. Petitioner, in effect, was tendered two offers for the surrender of his Indian stock. The first was a fixed amount, 65 cents per share—which was, as we have found, its fair market value. The second was that, upon refusing the first, he could assume the responsibility of proceeding for an independent appraisal of the stock and then receive either the 65 cents or such value in excess of that amount as the board of appraisal fixed. Petitioner accepted the first offer. Under the plan, Cities Service then paid to petitioner, on December 29, 1941, as a nondissenting shareholder, and he received for the surrender of his stock all that was contemplated or intended. That Cities Service, influenced as it was by the request of the Securities & Exchange Commission, should have paid the petitioner an additional 10 cents per share, does not change the situation. Petitioner, as a nondissenting shareholder, had no legal right to compel the payment of that amount. Nor did Indian. Nothing was added to the assets of Indian by the statutory right granted to dissenting stockholders of Indian by the New Jersey statute or the

action thereunder of dissenting shareholders. Cf. *Farnsworth* v. *Wood*, 91 N. Y. 308; *Runner* v. *Dwiggins*, 147 Ind. 238; 46 N. E. 580.

Respondent, however, argues that the shareholders' derivative actions were an asset, although the only one, which Indian retained until their settlement in 1943. This may be true. *Boehm* v. *Commissioner*, 326 U. S. 287. But in that case the Supreme Court, in affirming this Court, again approved the application of the "practical test" in determining when losses are sustained, and held that the existence of such suits did not postpone the fact of worthlessness of stock until the settlement of those suits.

Here Indian had sold all of its assets, except possibly the stockholders' suits, to Cities Service for cash and the assumption of Indian's liabilities. On December 29, 1941, petitioner received for the surrender of his Indian stock, his full share of that cash as provided in the plan of complete liquidation. The only Indian assets remaining were the stockholders' suits. Their asset value, at most, was comparable to that of the same kind of suits in the *Boehm* case, *supra*. Those suits are entitled to no different treatment here. Their existence did not, we think, postpone, as to petitioner, the completeness of the liquidation of Indian as a closed transaction. The *Beekman Winthrop* case, *supra*, and not *Dresser* v. *United States*, *supra*, is thus applicable. That transaction—in so far as it concerned petitioner—was closed and completed on December 29, 1941, when he surrendered his Indian stock for cancellation and received in exchange therefor 65 cents per share. We have so found. It follows that loss of petitioner was sustained at that time. Sec. 22 (e), I. R. C.

Reviewed by the Court.

*Decision will be entered for the petitioner.*