Addison F. Vars v. Commissioner.
Vars v. Commissioner
Docket No. 21771.
United States Tax Court
1950 Tax Ct. Memo LEXIS 295; 9 T.C.M. (CCH) 38; T.C.M. (RIA) 50020; January 24, 1950
*295 In 1931 and prior thereto petitioner and an associate were engaged in trading in stocks, which transactions were conducted through a broker. The agreement was that they would share profits and losses equally. There were losses on account of the stock market collapse and petitioner's associate was unable to pay his share of the losses on account of his poor financial condition. Petitioner settled up the losses and took his associate's promissory note for $10,000 payable on demand and drawing no interest. The financial condition of the debtor did not improve and he never paid anything on the note. Held, petitioner has not proved that the note had any value, either intrinsic or potential, at the beginning of the year 1945. Dunbar v. Commissioner, 119 Fed. (2d) 367. Held, further, even assuming that the note had value at the beginning of 1945, petitioner has not proved that it became worthless in the year 1945. This was his burden of proof. Boehm v. Commissioner, 326 U.S. 287. Emery S. Tucker, Esq., 906 Genesee Bldg., Buffalo, N. Y., for the petitioner. Robert M. Willan, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1945 of $2,605.88. This deficiency is due to the action of the Commissioner in disallowing as a deduction a bad debt loss of $10,000 which petitioner claimed on his income tax return for that year. This disallowance is explained by the Commissioner in his deficiency notice as follows: "(a) A deduction claimed in the amount of $10,000.00 as a bad debt is disallowed as not constituting an allowable deduction under the provisions of the Internal Revenue Code." Petitioner by an appropriate assignment of error contests this action of the Commissioner. *297 At the same time that the Commissioner disallowed the claimed bad debt deduction of $10,000 he made an adjustment in petitioner's favor of $6,525.50 as covering an overstatement of compensation which petitioner had reported on his return from the Sterling Engine Company. This latter adjustment is not contested by petitioner and, therefore, stands as determined by the Commissioner in his deficiency notice. Findings of Fact Petitioner is an individual residing in Washington, D.C. and filed his income tax return for the year 1945 with the Collector of Internal Revenue for the 28th District of New York. Petitioner and John N. Garver, Jr., sometimes hereafter referred to as Garver, opened a joint trading account late in the 1920's with a broker in Buffalo, New York. Each put some securities into this account and each was to share on a fifty-fifty basis the gains and losses of this account. Petitioner and Garver purchased stock on a low margin for the joint account and in addition petitioner used his credit to purchase stocks for the joint account. As a result of this method of trading and the fall of stock market prices the joint trading account was wiped out the petitioner and *298 Garver owed jointly a sizable sum of money. Petitioner assumed responsibility for the losses arising out of the joint trading account and paid them off. Garver's fifty-fifty share of these losses, for which he was liable to petitioner, amounted to a sizable sum of money. In 1931 Garver was in sad financial status and was unable to pay his share of the losses. In settlement of Garver's share of the loss petitioner accepted in 1931 a demand note in writing for $10,000 from Garver and a promise by Garver to take out and maintain a life insurance policy for $10,000 in favor of petitioner. The note which Garver executed in favor of petitioner reads as follows: "$10,000 Buffalo, N. Y. May 1, 1931. "OnDemand I promise to pay to the order of Addison Vars Ten thousand and no/100 Dollars at Buffalo "No interest. "[Signed] John N. Garver, Jr." Petitioner had no security for the demand note other than Garver's promise to maintain the premiums upon a life insurance policy upon himself with petitioner as beneficiary. Some time in the late 1930's Garver allowed the above life insurance policy to lapse with petitioner's consent. At the time petitioner and Garver had the joint trading *299 account, and until 1939, petitioner was president of Addison Vars, Inc., which was an advertising agency in Buffalo, New York. In 1939 petitioner sold all but a minor interest in the business to the people who had worked for him a number of years. He now resides in Washington, D.C.
From the period 1931 to the date of the hearing in this preceding Garver was an officer in Manufacturers and Traders Trust Company, being an assistant secretary from 1931 until the middle 30's, when he became a vice-president. Later, about 1943, he also became a director. Garver's particular duties at the bank during the period 1931 to 1949, consisted of being in charge of the business extension department. He had nothing to do with the loan department of the bank. Addison Vars, Inc. handled the advertising of Manufacturers and Traders Trust Company from 1930 until the date of the hearing in this proceeding and in this connection until 1939 petitioner had business relationships with Garver as the person in charge of the business extension department of the bank. Petitioner and Garver were close friends, talking [to] and seeing each other frequently during the period involved here. During the period *300 1931 to the date of the hearing in this proceeding petitioner has had a loan outstanding at Manufacturers and Traders Trust Company and each year from 1931 to 1945, petitioner submitted his personal statement to the bank showing as an asset an indebtedness of $10,000 from Garver to him. Each year during the period 1931 to 1938 or 1939, petitioner would ask Garver whether he was in a position to do something toward payment of the note and each year during this period Garver stated that he was financially unable to make payment but he hoped that he could some day. So far as the record shows Garver's financial situation did not improve. From time to time during the period 1940 to 1945, petitioner would ask Garver for payment of the note and each time Garver answered that he was financially unable to make payment but he hoped that he could some day. Garver intimated to petitioner all through this transaction that if petitioner wanted to write the note off he would consider himself obligated to pay petitioner if able to at a later date. Garver's intentions to pay the $10,000 note if he ever became financially able did not change from 1931 to the date of the hearing of this proceeding. *301 At no time from 1931 to the present time has Garver been able to pay off the note and petitioner has at all times been aware of this fact. In the fall of 1945 Garver, on a friendly basis with petitioner and trying to explain his inability to pay the note, consulted counsel as to his legal liability on the note. Garver does not remember what his counsel advised him. The demand note which petitioner received from John N. Garver, Jr., dated May 1, 1931, did not become worthless during the year 1945. Opinion BLACK, Judge: We have but one issue in this proceeding and that is whether petitioner is entitled to a deduction from his gross income in 1945 of $10,000 as a bad debt which became worthless in that taxable year. The applicable statute is section 23 (k) (1), I.R.C.[1]
*302 In Boehm v. Commissioner, 326 U.S. 287, the Supreme Court held that in a proceeding for redetermination of a deficiency in income tax where a deductible loss is claimed, taxpayers have the burden of establishing that there was a deductible loss in the taxable year. That Court further pointed out that a loss to be deductible in computing income tax must have been sustained in fact during the taxable year and the issue cannot be confined to an examination of taxpayer's beliefs and actions but requires a practical approach with all pertinent facts open to consideration regardless of their objective or subjective nature. It is clear from the foregoing decision of the Supreme Court that in order for petitioner to be entitled to the claimed deduction under section 23 (k) (1) of the Code, he has the burden to establish that his debt against Garver became worthless in the taxable year 1945. As a part of petitioner's burden in establishing that the debt became worthless in the year 1945, petitioner must show that the debt had some intrinsic or potential value at the close of the preceding year 1944. See Dunbar v. Commissioner, 119 Fed. (2d) 367. Has petitioner *303 met his burden of proof to show that this note of $10,000 due him by Garver had intrinsic or potential value at the end of 1944 and, therefore, at the beginning of the year 1945? We do not think he has met such burden of proof. Here was a note executed in 1931 by a debtor who was unable to pay his share of the losses at that time and so far as the record shows has continued in about the same financial condition as when the losses occurred. The debtor has never paid a single dollar of the principal of the note - it bore no interest. Although for a time Garver kept a policy of insurance in force in petitioner's favor to secure the debt, that policy was dropped some time in the late 1930's because Garver was unable to pay the premiums to keep up the policy. Also the New York Statute of Limitations had run against suit upon the indebtedness in question long prior to the year 1945. Section 48 of Article 2 of the New York Civil Practice Act reads in part as follows: " § 48. Actions to be commenced within six years. - The following actions must be commenced within six years after the cause of action has accrued: "1. An action upon a contract obligation or liability express or implied, *304 except a judgment and except as provided by section forty-seven and section forty-seven-a." Petitioner's note against Garver was dated May 1, 1931. It seems clear that the statute of limitations had barred suit upon it long prior to 1945. Petitioner does not dispute that fact. Thus, when we consider all these facts we are unable to find that petitioner's note for $10,000 against Garver had any intrinsic or potential value at the beginning of the year 1945. It seems reasonably clear to us that this debt had become worthless in some year prior to 1945 and, therefore, did not become worthless in 1945. Cf. Meltzer, et ux. v. Commissioner, 154 Fed. (2d) 776. But even assuming that the note had some value at the close of the year 1944 (and as above stated we do not think that the evidence shows that it had any) petitioner has not proved his contention that the note became worthless in 1945. As showing that there really was no change in the status of this note in the year 1945 from what it had been for several years prior thereto, the following questions and answers occur in the testimony of the witness John N. Garver, Jr.: "Q. Do you still intend to pay this note if at *305 some time in the future you should become financially able to do that? "A. More or less I feel that I would like to pay, repay Mr. Vars, if I thought I could. "Q. Have your intentions toward paying this note, if you were in a position to do so, changed from the period 1940 until 1946 or up until the present time? In other words, have your intentions to pay this note changed during this period? "A. No, sir." Again in testifying about conversations which he had with petitioner in prior years and in the year 1945 in which petitioner was asking for payment of his note, Garver testified as follows: "Well, he always brought out the question of payment when we discussed it and as I have stated before I told him that I was still not financially able to pay and I think that I intimated right along that all through this transaction that if he felt that he wanted to write it off and at some later time I could pay that would be all right with me." Therefore, taking into consideration all the facts in evidence and weighing them carefully, we conclude that petitioner has not proved that his debt against Garver became worthless in the year 1945. The Commissioner is, therefore, sustained *306 in his disallowance of this bad debt deduction. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.↩