**BOESEL**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 66, Docket 22711.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1953.

Decided Jan. 8, 1954.

**818**

William B. Shealy, New York City, for petitioner.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott and Louise Foster, Washington, D. C., for respondent.

Before CHASE, Chief Judge, and L. HAND and MEDINA, Circuit Judges.

MEDINA, Circuit Judge.

On March 10, 1930, petitioner, a stockbroker and financial promoter, entered into an agreement with Frank P. Parish & Co. by the terms of which he agreed to subscribe for 5,000 shares of Missouri-Kansas Pipe Line Company (hereinafter referred to as Mokan) common stock at $25 per share, payment to be made in 36 equal installments, bearing interest at the rate of 6% per annum on any unpaid monthly balance due. The stock was not deliverable until the expiration of three years from the date of the agreement; and the seller was given the option, in the event of default by petitioner in making the payments as agreed, to terminate the agreement and refund the money already paid or the number of shares of stock covered by such payments. The Tax Court has found that "This agreement was subsequently acquired by Mokan," and we shall assume that Mokan became bound by the terms thereof.

Having paid installments aggregating $28,400 petitioner defaulted in his payments in October, 1930, and made none thereafter. Petitioner testified that in October, 1930, he told Parish, who was then president and a director of Mokan, that it was inconvenient to continue the payments and Parish replied "Don't pay them." And in February, 1932, there was a further conversation in which Parish agreed to abrogate the contract and said "I will do everything possible to deliver the stock. The cash is out of the question." The finding of the Tax Court is that Parish and petitioner at that time "discussed an arrangement" whereby petitioner was to be released from further obligation under the contract and Parish was to deliver "promptly" the 1136 shares of common stock represented by the payments already made.

Shortly after this conversation Mokan went into a protective receivership and, after the assets were returned to Mokan by the receivers in 1937, Parish was ousted from the presidency after a proxy fight and his successor refused to deliver the shares to petitioner.

The Mokan common stock over the years continued to have some value but such efforts as were made by petitioner to obtain delivery of the 1136 shares claimed by him were unavailing. In

1944 Mokan embarked upon a plan to liquidate and distribute its assets, consisting of stock in operating companies, to its shareholders in exchange for their Mokan shares. The time first fixed for the exchange was in early 1945 but the privilege of participation was later extended into 1946.

Finally, when petitioner became convinced that nothing short of litigation would compel delivery of the 1136 shares of stock, he concluded in 1945 that the expense of such litigation was prohibitive, and he "decided to write it off," "dropped the claim," and set forth the item of $28,400 as an ordinary loss deduction in his income tax for that year.

■ The way of the taxpayer is hard who tries to fix the loss of a capital investment by anything except a sale. But the principles of law which govern such situations are clear and have long been settled. There must be some identifiable event which shows that a loss was actually sustained in the taxable period. The mere subjective conclusion of petitioner that the loss then took place will not suffice. Boehm v. Commissioner of Internal Revenue, 2 Cir., 1945, 146 F.2d 553, affirmed 1945, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78. And the burden of proof is upon petitioner to show that his claim was not worthless prior to 1945. Cass v. Helvering, 8 Cir., 1936, 83 F.2d 841.

■ The crux of the matter is that petitioner has not shown that he at any time became entitled to recognition as a stockholder of Mokan and to delivery of the shares of stock in dispute. That he defaulted in his payments under the agreement is not questioned. Not only is there no proof that the directors authorized or ratified the oral promise made by Parish in 1932, but the receivers on July 8, 1932, had found no evidence of the exercise of the option by Mokan; and four years later they were demanding performance by petitioner. On this record we can find no warrant for saying that petitioner ever was the owner of the 1136 shares of Mokan common stock. As held by the Tax Court

"the claim had become worthless many years before" 1945. In any event, if the chose in action, such as it was, had any value in 1944, it was incumbent upon petitioner to prove such to be the fact, and he has not done so.

Affirmed.