John W. Rope and Geneva K. Rope v. Commissioner.
Rope v. Commissioner
Docket No. 51463.
United States Tax Court
T.C. Memo 1956-140; 1956 Tax Ct. Memo LEXIS 153; 15 T.C.M. (CCH) 707; T.C.M. (RIA) 56140; June 15, 1956
*153 Robert Tait, Esq., Savings Building, Lima, Ohio, for the petitioners. John C. Calhoun, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax for the fiscal year ending October 31, 1949 of $2,884.64. The issues for decision are whether advances aggregating $19,826.33 made by petitioner to a corporation in which he was a principal stockholder represent contributions to capital or a business or nonbusiness bad debt which became worthless in the taxable year. Findings of Fact John W. Rope (hereafter called petitioner) and Geneva K. Rope are husband and wife residing at Lima, Ohio. They filed a joint income tax return for the fiscal year ending October 31, 1949 with the collector of internal revenue for the tenth district of Ohio. About 1935 petitioner began the operation of an agency for the sale of International Harvester trucks, first with a partner, but soon taking over the agency himself. In 1940 petitioner went into partnership with two others called Highway Haulers Company. The partnership engaged in the trucking business. Petitioner became a creditor of the partnership. The *154 indebtedness was evidenced by notes or secured by title to partnership trucks, which title petitioner held until the indebtedness was paid. Petitioner also became interested in a business called the Five Acre Auto Wrecking Company. He let the proprietor of this business have a "bunch of used trucks" which he owned in return for "one-half of the money for one-half of the parts he sold, plus money for one-half of the junk they finally salvaged out." In 1937 petitioner owned 42 used school buses for which he could find no sale. He turned these buses over to some men in Tennessee, taking their note for the buses "payable when they received their money." Petitioner also helped these men obtain other buses by furnishing cash to buy the vehicles and "then take(taking) a note for the (vehicles)." In 1948 petitioner assisted L. E. O'Brien to start in business under the name of Inter-City Cartage Company by lending him two trucks to which petitioner kept title. Petitioner also leased other trucks to Inter-City Cartage Company, which it later purchased by financing furnished by third parties. In a year undisclosed by the record petitioner became a stockholder to the extent of $2,000 (a *155 1/5 interest) in Dot Lines, Inc. He made loans to Dot Lines, Inc. approximating $12,000 secured by four trucks. In 1947 and 1948 petitioner purchased stock in the Delphos Grain and Meal Company and also purchased stock in and made loans to the Lima Vehicle Rental Company. Early in 1949 petitioner and two others decided to form a corporation for the purpose of operating a plant to dehydrate alfalfa near Murfreesboro, Tennessee. The original investments were agreed on as follows: Arnold Poppe
$10,500
Petitioner
10,000
E. M. Short
3,000
For this purpose Bremco of Tennessee, Inc. (hereafter called Bremco) was incorporated under the laws of Tennessee on June 13, 1949. Poppe had the technical "know-how" necessary to the success of Bremco's business. He was forced by personal financial difficulties to withdraw from active participation in Bremco shortly after it started operations. The business was not successful. It soon became necessary for petitioner to advance and continue to advance money to Bremco for supplies, equipment and miscellaneous expenses. Such advances continued until about October 28, 1949. They totaled $19,826.33. On August 13, 1949, petitioner *156 purchased the stock interests of Poppe and Short and thereafter owned 95 per cent of the corporate stock. Bremco continued in existence through March 1951. Petitioner temporarily discontinued his personal supervision of Bremco's corporate activities during the fall of 1949. In the early part of 1950 a reorganization was attempted and some efforts were made to salvage the corporation which continued into the year 1951. During the latter part of 1949 petitioner made little effort to dispose of the assets of Bremco or to determine whether he could recoup the monies advanced to Bremco. The balance sheet of Bremco contained in its income tax return for the fiscal year ending March 31, 1950 showed its assets to be greater than its liabilities by some $29,000. On their income tax return for the fiscal year ending October 31, 1949, petitioners in Schedule E claimed a "Loan Loss - Bremco of Tennessee" in the amount of $19,826.33. In determining the deficiency involved herein the Commissioner disallowed the loss and explained as follows: "In Schedule E of your return for the fiscal year ended October 31, 1949, you claimed a deduction of $19,826.33, as realized from a 'Loan Loss - Bremco *157 of Tennessee, Murfreesboro, Tenn.' The amount of $19,826.33, representing advances made by you to Bremco of Tennessee, Inc., is held to constitute a nonbusiness debt within the meaning of section 23(k)(4) of the Internal Revenue Code. Any loss resulting therefrom is considered a short-term capital loss for the year in which the debt becomes worthless. "It is held that the debt of $19,826.33 did not become worthless during the taxable year ended October 31, 1949; therefore the entire amount as claimed has been eliminated as a deduction." Opinion TIETJENS, Judge: Petitioner's theory of his case is that the amounts advanced to Bremco constituted a business bad debt which became worthless in the fiscal year ending October 31, 1949, and which, accordingly, was deductible in full in that year. As disclosed in our findings of fact, the Commissioner in determining the deficiency herein, found that the advances constituted a nonbusiness debt which did not become worthless in the taxable year. At the hearing and on brief, counsel for the Commissioner advanced the alternate contention that the advances were a contribution to capital. We need not reach the alternate *158 contention for we are of the opinion that no matter how we characterize the advances, i.e., business or nonbusiness bad debt, or capital contribution, we must decide against petitioner because he has not proven that a loss occurred in the taxable year involved. That was his burden. ( Boehm v. Commissioner, 326 U.S. 287.) He has not carried it. At the end of the taxable year the corporation was still extant and Bremco's existence continued beyond the end of that year for an undetermined time. Its tax return for the fiscal year ending March 31, 1950 showed solvency. Petitioner made little effort toward the end of his own taxable year ending October 31, 1949 to salvage his advances. Whether or not they could have been salvaged may be problematical on the record. Nevertheless, no identifiable event showing worthlessness has been established and, in our opinion, petitioner has not proven that by October 31, 1949 the claimed indebtedness to him from Bremco had lost all its value. In this respect we quote from Earl V. Perry, 22 T.C. 968, relied on by the Commissioner: "Mere nonpayment of a debt does not prove its worthlessness and petitioners' failure to take *159 reasonable steps to enforce collection of the debt, despite their motive for such failure, does not justify a bad debt deduction unless there is proof that those steps would be futile. New York Water Service Corporation, 12 T.C. 780; Thom v. Burnet, (C.A., D.C. Cir.) 55 Fed. (2d) 1039; George F. Thompson, 6 T.C. 285, affirmed per curiam (C.A. 2) 161 Fed. (2d) 185; A. Finkenberg's Sons, Inc., 17 T.C. 973; H. D. Lee Mercantile Co. v. Commissioner, (C.A. 10) 79 Fed. (2d) 391, 393. As we have shown, the corporation had assets from which the $20,000 debt could have been satisfied. The fact that its capital was impaired is, by itself, of no moment. See James M. Hawkins, 20 T.C. 1069. In short, where, as here, the debtor corporation was solvent, in the sense that its assets exceeded its liabilities exclusive of proprietorship, no bad debt deduction is allowable. Mills Bennett, supra, [20 B.T.A. 171]; Irving L. Ernst, 18 B.T.A. 928; First National Bank of Los Angeles et al. 6 B.T.A. 850." Decision will be entered for the respondent.