William Ockrant and Babette Ockrant v. Commissioner.
Ockrant v. Commissioner
Docket No. 1231-65.
United States Tax Court
T.C. Memo 1966-60; 1966 Tax Ct. Memo LEXIS 221; 25 T.C.M. (CCH) 333; T.C.M. (RIA) 66060; March 22, 1966
Kenneth R. Hughes, for the petitioners. Rodney G. Haworth, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioners' income tax for 1960 in the amount of $14,586.75. The issues are (1) whether petitioners are entitled to a deduction in 1960 because of the purported worthlessness in that year of certain loans (or, in the alternative, capital advances) made by petitioners to their wholly-owned corporation; and (2) whether petitioners *222 are entitled to a deduction as business expenses under section 162(a) of the Internal Revenue Code of 1954 for certain travel and entertainment expenditures purportedly incurred in 1960. Findings of Fact Some of the facts were stipulated and they are so found. William and Babette Ockrant, husband and wife, are residents of Cincinnati, Ohio. They filed their joint Federal income tax return for 1960 with the district director of internal revenue at Cincinnati, Ohio. In 1956 petitioner William Ockrant was a stockholder in Railway Supply and Manufacturing Company whose business included the buying and selling of the by-products of textile mills. Petitioner had joined the company in 1914. Due to a disagreement among stockholders, petitioner in 1956 sold his stock in the Railway Supply and Manufacturing Company and was to receive payments for the stock in 1957, 1958, 1959 and 1960. The petitioners' 1960 Federal income tax return shows that the capital gain from the sale was reported on the installment method; that no payments were received in 1956; that capital gain from the sale in the total amount of $78,109.80 was reported in 1957, 1958 and 1959; and that *223 capital gain of $75,445.59 was reported in 1960. The William Ockrant Corporation was incorporated under the laws of Ohio on March 10, 1956 and during the period here relevant petitioner and his wife owned all the stock of the corporation. The corporation was engaged in the sale of cotton and other waste materials, and its physical assets, including land, buildings, machinery and equipment and inventories were located in Charlotte, North Carolina. The balance sheet in the corporation's Federal income tax return for its fiscal year ended September 30, 1956 showed total assets as of that date of approximately $619,000 and total liabilities of approximately $355,000. The net sales of the William Ockrant Corporation continually declined beginning with the fiscal year ended September 30, 1957. The corporation reported the following net operating losses on its Federal income tax returns for its fiscal years ended September 30, 1956 through 1960: Fiscal year
ended
Net operating
Sept. 30
loss
1956
$ (20,429.54)
1957
(144,023.79)
1958
(36,952.73)
1959
(72,059.91)
1960
(93,320.00)
In its Federal income tax returns for the fiscal years ended September 30, 1962, 1963 *224 and 1964 the William Ockrant Corporation reported the following taxable income before net operating loss deductions: Fiscal year
Taxable income before
ended
net operating loss
Sept. 30
deduction
1962
$185,113.92
1963
3,539.84
1964
658.05
The William Ockrant Corporation was still in existence at the time of the trial. In 1960 the general manager of the William Ockrant Corporation resigned, and in that same year the number of corporate employees was reduced, either through resignation or reduction in force. In 1960 the corporation also closed its offices in New York, California and Michigan. Petitioner attempted to sell the assets of the William Ockrant Corporation prior to and subsequent to 1960, as well as during the year 1960, and in 1962 petitioner finally sold the corporation's plant and equipment which was located in Charlotte, North Carolina. Petitioner advanced funds to the William Ockrant Corporation during its fiscal years ended September 30, 1956 through 1962. On September 30, 1960 petitioner's advances to the corporation, none of which had been repaid to him, totaled $127,578.39. Petitioner made additional advances to the William Ockrant Corporation *225 during its fiscal years ended September 30, 1961 and 1962 in the respective amounts of $1,669.15 and $24,984.25. The balance sheets included in the corporation's income tax returns filed by the William Ockrant Corporation for its fiscal years ended September 30, 1963 and 1964 show the status of the liability account "Loans from stockholders" as follows: September 30, 1962, $154,231.79; September 30, 1963, $124,266.69; and September 30, 1964,$113,266.69. In their 1960 joint Federal income tax return petitioners claimed a deduction of $97,995.04 with respect to these advances to the corporation. Respondent in his statutory notice of deficiency disallowed this deduction in full, with the following explanation: (a) With respect to the amount of $97,995.04 deducted by you in your income tax return for the taxable year ended December 31, 1960, and there described by you as "loans to the William Ockrant Corporation," it is determined that any deduction allowable to you would be in connection with the worthlessness of a nonbusiness bad debt under the provisions of Section 166 of the Internal Revenue Code of 1954. However, no deduction is allowed to you for the *226 reason that you have failed to establish that such debt became worthless during the year 1960. Petitioner in his 1960 tax return claimed a deduction of $6,239.40 identified as "Business Expense". According to a schedule attached to the return, this deduction was computed as follows: Public Transportation, Hotel, Meals,
Entertainment, Gifts, Etc.
$5,050.02
Automobile (Repairs, Gasoline, Etc.)
504.13
Long Distance Telephone Charges
685.25
$6,239.40
Respondent in his statutory notice of deficiency determined that "travel and entertainment expense in the amount of $4,239.40 is not an allowable deduction under the provisions of Section 162 or any other section of the Internal Revenue Code of 1954." Opinion Petitioner argues that the advances to the corporation were loans which became worthless in 1960, giving rise to a business bad debt deduction under section 166(a) of the Internal Revenue Code of 1954. [1] Petitioner also argues, in the alternative, that if the advances are considered to be capital contributions to the corporations, they nevertheless became worthless in 1960, giving rise, presumably, to a capital loss deduction. Respondent *227 argues (1) that the advances were capital contributions, not debts; (2) that if they were, in fact debts, then they were nonbusiness debts; and (3) that, in any event, they did not become worthless in 1960. Petitioner's income tax return for 1960 shows that the amount of the bad debt deduction claimed in that year ($97,995.04) was nothing more than the corporation's net worth deficit as of September 30, 1960. [2] On brief, petitioner's whole argument is that, for various enumerated reasons, the advances to the corporation (whether they be debts or contributions to capital) were completely worthless by the end of 1960. We do not believe it will be necessary in this case to determine the exact nature of these advances to the corporation, since, whatever their nature, petitioner must establish that they became worthless or uncollectible in 1960. *228 The date of worthlessness or uncollectibility must be fixed by identifiable events which form the basis of reasonable grounds for abandoning hope of recovery. See Boehm v. Commissioner, 326 U.S. 287. Petitioner has offered no satisfactory evidence that such events took place in 1960 or that the advances were in any way uncollectible in that year. The corporation incurred operating losses, not only in its fiscal year ending September 30, 1960, but in all of its prior fiscal years since the formation of the corporation in 1956. We have examined the evidence carefully as to events in 1960 and, at most, they merely indicate that the corporation was taking steps to curtail its losses and, in fact, petitioner testified to that effect. The reduction in force, the closing of various offices in various cities, and the limitation of its plant operations in 1960 are all consistent with such an effort. There is evidence that late in 1960 petitioner did consider selling the corporation's plant and equipment in Charlotte, North Carolina, but the evidence indicates that this course of action did not go beyond discussions with a real estate firm. Moreover, petitioner testified that *229 he made similar attempts to sell the corporate assets in years prior to 1960 as well as in subsequent years. Much of the evidence in the record militates strongly against petitioner's position. The corporation reported taxable income in its returns for the fiscal years ended September 30, 1962, 1963 and 1964, and in those three fiscal years reported net receipts of $333,978.71, $81,387.66 and $77,203.07, respectively. Furthermore, the corporation's returns for the fiscal years ended September 30, 1963 and 1964 indicate that the corporation's liability account "Loans from stockholders" (petitioner and his wife were the sole stockholders) was reduced from $154,231.79 as of September 30, 1962 to $113,266.69 on September 30, 1964, indicating repayments of about $40,000 in those fiscal years. Finally, the evidence shows that petitioner made additional advances to the William Ockrant Corporation in the fiscal years ended September 30, 1961 and 1962 in the respective amounts of $1,669.15 and $24,984.25 and that the corporation was still in existence at the time of the trial. Petitioner's choice of 1960 for claiming the deduction is understandable, since his return for that year shows *230 a capital gain of approximately $75,000 resulting from the final installment payment of the purchase price of certain stock sold by him in 1956, and either an ordinary loss deduction or a capital loss deduction in 1960 would serve to eliminate such capital gain from taxable income. However, we cannot find, on the basis of this record, any events or other evidence to support petitioner's claim that these advances to the corporation were worthless or in any way uncollectible as of the end of 1960. We sustain respondent on this issue. The next issue is whether petitioner is entitled to a deduction for travel and entertainment expenses in 1960 in excess of $2,000. of $6,239.40 in his 1960 return and respondent disallowed $4,239.40 of this amount. Respondent argues that the disallowed expenses were incurred by petitioner on behalf of the corporation and that they are expenses of the corporate employer which may not be deducted by petitioner as his own expenses under section 162. Petitioner agrees that these expenditures were incurred on behalf of the corporation, but argues that when he submitted his expense accounts to the corporation, the corporation did not have funds to reimburse *231 him and that, therefore, petitioner is entitled to a deduction for these unreimbursed expenses. It fairly appears that petitioner was entitled to reimbursement from the corporation for these expenses incurred on the corporation's behalf. Where such an arrangement exists, the failure to claim such reimbursement from the corporation will not convert the corporation's expenses into the corporate employee's own expenses which would be deductible by him. Horace E. Podems, 24 T.C. 21. Here, petitioner states that he sought reimbursement but the corporation was financially unable to pay him. That would not make the expenditures deductible as his travel and entertainment expenses. At most, under such circumstances, a debt may arise from the corporation to petitioner for the unreimbursed amount. Such a debt would be deductible only in the year in which it became worthless and, as we have indicated earlier in the opinion, this record does not support any contention that this or any other debt owed by the corporation to the petitioner became worthless or in any way uncollectible in 1960. We sustain respondent on this issue. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. Petitioners' 1960 return contains the following statement: During the past several years I have made loans to the William Ockrant Corporation of which I own 100% of the stock. As of December 31, 1960, the total of such advances not repaid was $100,810.65. As of the close of the corporation's last fiscal year, it had a net worth deficit of $97,995.04. The Corporation has been operating at a loss for several years and there is very little possibility of its ever being able to repay the loans. The loans were necessary to enable the Corporation to pay its other obligations; failure of the Corporation's credit would ruin my personal reputation and position in the Textile waste industry, in which I have been personally active for many years. Deduction is therefore taken to the extent of the Corporation's deficit.↩