Elmar Ott and Aino Ott v. Commissioner.
Ott v. Commissioner
Docket No. 2152-65.
United States Tax Court
T.C. Memo 1967-117; 1967 Tax Ct. Memo LEXIS 143; 26 T.C.M. (CCH) 540; T.C.M. (RIA) 67117; May 26, 1967
*143 Petitioners purchased from a building contractor a 2-family house, on or about June 10, 1959, for $31,000. The contractor guaranteed the basement against water seepage. Petitioners immediately occupied one-half of the house as their residence and rented out the other half as business property. Within two months after moving in, petitioners discovered that water was seeping into their basement. The contractor promised to correct it but did nothing. In order to save their property, petitioners spent $1,880 in 1960, $2,370 in 1961, and $746 in 1962 in waterproofing their basement. In 1961 petitioners brought suit against the contractor, a corporation, and, on May 10, 1961, the court rendered judgment for petitioners by default for a total of $4,756.57. Later, in 1961, petitioners brought supplementary proceedings to collect the judgment but it was developed at the hearing that the defendant was insolvent and had no assets to satisfy the claims of creditors. Late in 1961 and in 1962 petitioners requested a third attorney to try to collect the judgment but in August 1962 the attorney declined the request on the ground that the corporation had no available assets. Petitioners' contention *144 before us is that they are entitled to deduct in 1962 one-half of $746, or $373, as a business bad debt, and $1,000 (one-half of cost of waterproofing of $4,996, limited to $1,000) as a nonbusiness bad debt. Held, under the objective rather than the subjective test, the debts, assuming they were debts, became worthless in 1961 and petitioners are not entitled to the deductions claimed. Elmar Ott, pro se, 4054 Duryea Ave., New York, N. Y. John K. Antholis, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year 1962 of $375.49. Petitioners assign two errors as follows: A. The $1000.00 which was deducted on the income tax return as short term capital loss and found not allowable as deduction by the respondent is actually non-business bad debt, which became totally worthless in the year 1962 and is deductible on basis of Internal Revenue Code 1954section 166(d)(1)(B) and section 166(d)(2). B. The $373.00, as part of rental loss deduction and determined unallowable by respondent, is actually bad debt which became totally worthless in the year 1962 and is deductible on basis of section 166 of the Internal Revenue Code 1954. *145 In addition to these assignments of error, the written stipulation states "* * * but the amount of the basis of the property for determining depreciation is in issue." Findings of Fact Some of the facts were stipulated and are incorporated herein by reference. Petitioners are husband and wife and reside in New York, N. Y. They filed a timely joint Federal income tax return for the year 1962 with the district director of internal revenue, Manhattan, N. Y. Such return was filed on a calendar year basis, using the cash receipts and disbursements method of accounting. On or about June 10, 1959, petitioners purchased from Demille Construction Corp., sometimes referred to herein as the contractor, a newly constructed 2-family brick dwelling located in New York, N. Y., for the price of $31,000. Since the purchase of this dwelling, petitioners have lived in one apartment unit and rented out the other apartment unit as business property. The agreement between petitioners and the contractor, dated June 10, 1959, provided, among other things, that: The Seller does hereby guarantee all workmanship in said house including the roof, plumbing, heating, electrical system and basement against water *146 seepage for a period of one year from the date of the delivery of the deed. This clause shall survive the passing of title and the delivery of said deed. In the summer of 1959 petitioners discovered that water was seeping into their basement. They notified the contractor of the defects and although the contractor promised to correct such defects, it never did so. Petitioners had the defects corrected on their own, without assistance from the contractor. Petitioners, by their attorney Djerf, instituted a suit in the Supreme Court of the State of New York, New York County, against the contractor. A judgment by default was filed in favor of the plaintiffs on May 10, 1961, in the amount of $4,170.52, plus interest and disbursements in the amount of $586.05, making a total of $4,756.57. The judgment was based on the expenses that had been incurred during waterproofing work carried on by petitioners, and also estimated expenses for future waterproofing work. The contractor has not paid the judgment described in the preceding paragraph. In supplementary proceedings brought by a second attorney, Feinberg, before the Supreme Court, Westchester County, N. Y., Dominick Mele, president of the *147 contractor corporation, gave sworn testimony on July 24, 1961, to the effect that the contractor was insolvent and had no assets with which it could satisfy the claims of creditors. After examining the books and records of the contractor in 1961, Feinberg advised petitioners in 1961 that nothing could be done to collect the judgment since there were no assets owned by the corporation. Thereafter, in 1961, petitioners tried to persuade Feinberg to continue his efforts to collect the judgment but Feinberg again advised petitioners he could do nothing. Later in 1961 and in 1962 petitioners contacted a third attorney, Arvo Reiman, and requested him to try and collect the judgment but, in August 1962, Reiman declined the request on the ground that the corporation had no available assets. From 1959 through 1962 petitioners expended the following amounts for waterproofing the basement and for legal fees related to obtaining the judgment against the contractor: Basement
Legal
Year
Waterproofing
Expenses
Total
1959 $165
$ 165
1960
$1,880
80
1,960
1961
2,370
274
2,644
1962
746
746
Totals
$4,996 $519
$5,515
One-half of the amounts expended in the years 1959 through 1961 was deducted in those years against rental income *148 as follows: As a
As Legal
Year
Repair
Fees
Total
1959
$ 82.50
$ 82.50
1960
$ 940.00
40.00
980.00
1961
1,185.00
137.00
1,322.00
$2,125.00
$259.50.$2h,384.50
In the petitioners' 1962 income tax return the petitioners claimed a rental loss of $709.11 which was computed as follows: Total Rents
$1,352.00
Depreciation $1,250.00 - 1/2 deducted
$625.00
Repairs: Basement waterproofing
$ 746.00
Other repairs
128.00
Total
$ 874.00
1/2 deducted repairs
437.00
Other Expenses: Total
$1,922.36
1/2 deducted
$ 961.18
Advertising
37.93
Total Other Expenses deducted
999.11
Total deductions
2,061.11
Loss on Rental Property
$ 709.11
The useful life of the dwelling was 40 years at the time of purchase in 1959. In the notice of deficiency the respondent adjusted the claimed loss on the rental property as follows: Depreciation on return (1/2 of $1,250.00)
$625.00
Depreciation allowable (1/2 of $918.00)
459.00
Depreciation unallowable
$166.00
Unallowable basement waterproofing ex-
pense
373.00
Unallowable rental loss deduction
$539.00
In their return for 1962 petitioners deducted as a nonbusiness bad debt one-half of the cost of waterproofing of $4,996, or $2,498, limited to $1,000. The respondent disallowed the deduction and, in the statement attached to the *149 deficiency notice, explained the disallowance thus: (b) The $2,498.00 which you deducted to the extent of $1,000.00 as a short-term capital loss on your income tax return for the taxable year ended 12/31/62 is not allowable as a deduction under any of the provisions of the Internal Revenue Code of 1954. At the hearing the parties orally stipulated that if the Court should find that petitioners are not entitled to the bad debt deductions claimed, then the adjustments to the depreciation as reflected in the statutory deficiency notice should be corrected by showing the allowable depreciation to be $405.89 instead of $459 as shown in the deficiency notice, and that the $405.89 is to be computed as follows: Basis of property as reported on re-
turn
$31,725.00
Add: Total amount expended for
legal fees and waterproofing
5,515.00
Total
$37,240.00
One-half allocated to rental property
18,620.00
Less: Amount deducted in previous
years as repairs and legal fees
2,384.50
Corrected basis of depreciable prop-
erty
$16,235.50
Depreciation allowable at 2 1/2%
405.89
Ultimate Finding of Fact Any claims petitioners had against the contractor became totally worthless in 1961. Opinion The applicable provisions of the *150 Internal Revenue Code of 1954 are in the margin. [1] *151 The applicable provisions of the Tax Regulations are in the margin. [2] *152 The only errors assigned by petitioners are that respondent erred in not allowing deductions in 1962 of $1,000 for a nonbusiness bad debt and $373 as a business bad debt, both of which "became totally worthless in the year 1962." The respondent argues that no bona fide debt existed "since any claim petitioners had against the Contractor did not arise out of a debtor-creditor relationship but, rather, arose from a contractual relationship"; that the expenditures made by petitioners for waterproofing were capital expenditures; and that, in any event, even assuming bona fide debts to exist, they became worthless in 1961 when it became evident that the contractor was hopelessly insolvent and unable to pay its liabilities. It may be noted that in the years 1959 through 1961 (prior to the taxable year 1962) petitioners deducted one-half of the amounts *153 expended in those years for waterproofing and legal fees as ordinary and necessary expenses under section 162, I.R.C. 1954. They did the same thing in 1962 for one-half of the $746 expended for waterproofing, but they now contend that the $373 is deductible in 1962 as a business bad debt under section 166(a)(1), supra. At no time has any claim been made for a loss sustained under section 165, I.R.C. 1954. Sections 165 and 166 are mutually exclusive, Spring City Foundry Co. v. Commissioner, 292 U.S. 182 (1934), and a taxpayer is not necessarily denied relief because he relied on the wrong section of the statute. Cf. Seufert Bros. Co. v. Lucas, 44 F. 2d 528 (C.A. 9, 1930), reversing 14 B.T.A. 1023. But, since petitioners in the instant case specifically rely on section 166, we will assume without deciding that a bona fide debt arose upon the entering of the judgment against the contractor on May 10, 1961. But when petitioners tried to get execution on the judgment by bringing supplementary proceedings against the contractor, it was established at the hearing held on July 24, 1961, that the contractor was hopelessly insolvent and unable to pay its liabilities, part of which was a *154 Federal lien for withholding taxes and Social Security in the amount of $5,000. In determining when a debt becomes worthless, we must apply the objective rather than the subjective test. Denver & Rio Grande Western Railroad Co. v. Commissioner, 279 F. 2d 368 (C.A. 10, 1960), affirming 32 T.C. 43 (Sixth Issue). In that case, among other things, we said: A debt that has become totally worthless must be deducted for income tax purposes in the year in which it became completely worthless and the deduction cannot be saved by a taxpayer to be charged off in some later year. * * * [Citations] In affirming our decision, the Court of Appeals made these statements: The taxpayer assails the Tax Court decision on the ground that it failed to make a specific finding as to when the bonds became worthless. This was not necessary. The burden was on the taxpayer to establish that the bonds became worthless in one of the tax years in question. If they became worthless before 1951, the first of such years, the time when they so became worthless is not material. We have no doubt that the taxpayer acted in good faith, and we realize that in determining when a security becomes worthless hindsight is *155 much better than foresight. However, value cannot be based on hope alone. The statute requires the objective test of when, in fact, the bonds became worthless and not the subjective test of the taxpayer's reasonable and honest belief of worth or worthlessness. As said by the Supreme Court in the Boehm decision, [n21] the difficulties confronting one who in good faith tries to choose the proper year in which to claim a deduction for bad debts are inherent in the statute as now framed. * * * [Footnote omitted.] In the instant case we find and hold that any debts petitioners may have held against the contractor became totally worthless prior to the taxable year 1962. We sustain the respondent's determination in disallowing the deductions claimed. We would arrive at the same result, namely, no deduction in 1962, if we considered either section 162 or 165. Cf. Boehm v. Commissioner, 326 U.S. 287 (1945). It follows that effect should be given to the oral stipulation set out in our findings regarding depreciation. Decision will be entered under Rule 50. Footnotes
1. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * *
(d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. * * *
SEC. 1211. LIMITATION ON CAPITAL LOSSES. (b) Other Taxpayers. - In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the taxable income of the taxpayer or $1,000, whichever is smaller. * * * [Emphasis supplied.] 2. § 1.166-1 Bad debts. (a) Allowance of deduction. Section 166 provides that, in computing taxable income under section 63, a deduction shall be allowed in respect of bad debts owed to the taxpayer. For this purpose, bad debts shall, subject to the provisions of section 166 and the regulations thereunder, be taken into account either as - (1) A deduction in respect of debts which become worthless in whole or in part; * * *
(c) Bona fide debt required. Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a detor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. * * * § 1.166-2 Evidence of worthlessness. (a) General rule. In determining whether a debt is worthless in whole or in part the district director will consider all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor. (b) Legal action not required. Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for purposes of the deduction under section 166↩. [Emphasis supplied.]