Henry GOETZ and Mathilde Goetz,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. 1009–56.

United States District Court
D. New Jersey.

May 29, 1958.

Harold Druse, Plainfield, N. J., for plaintiffs.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., and Charles K. Rice, Asst. Atty. Gen., by James P. Garland, and Jerome S. Hertz, Washington, D. C., for the Government.

WORTENDYKE, District Judge.

Jurisdiction of this action is conferred by 28 U.S.C.A. § 1346(a) (1). Plaintiffs (taxpayers), husband and wife, seek refund of portion of income tax ($1,381.-74), alleged to have been illegally assessed and collected for the calendar year 1952 by reason of disallowance of claimed loss deduction of $2,500 from gross income (representing one-half of $5,000 paid on a contract hereinafter discussed) under 26 U.S.C.A. § 23(e) (1). The case has been submitted upon the pleadings, the transcript of the pretrial order, a written stipulation of facts and the documentary exhibits annexed thereto. Briefs have been presented in behalf of the respective parties.

The evidence discloses that Henry Goetz and Henry Ruschmann, partners doing business as Goetz & Ruschmann (G & R) in Maplewood, New Jersey, entered into a written agreement, dated May 19, 1950, with Franz Mueller und Sohn (Mueller), of Bielefeld, Germany, for the purchase by G & R from Mueller of certain specialized machinery and the furnishing of certain services by the seller in connection therewith. In compliance with the provisions of that agreement, G & R paid Mueller $5,000. during the year 1950, but the consideration for that payment has never been performed by Mueller, nor has any part of the amount of the payment been refunded. It is conceded by taxpayers that G & R still have a chose in action against Mueller which did not become worthless dur-

ing the tax year (1952); but the taxpayers claim "that the project which originally prompted the agreement of May 19, 1950, and the payments made thereunder, was useless to them (G & R) before the close of 1952, and hence abandoned by them in 1952." The fact of such an abandonment is denied by defendant, although defendant contends that such abandonment, if it did occur, is irrelevant.

The parties concede that plaintiffs have complied with all procedural prerequisites to the maintenance of this action.

Section 23(e) of the Internal Revenue Code of 1939 (26 U.S.C.A. § 23(e)), insofar as here pertinent, provides as follows:

> "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
>
> \* \* \* \* \* \*
>
> "(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
>
> "(1) if incurred in trade or business; or
>
> "(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*"

From the foregoing, it will be noted that in order to be entitled to a deduction from gross income an individual must (a) sustain a loss, (b) during the taxable year, and (c) that loss must be uncompensated for.

In this case we are concerned only with the year 1952, since it is for the purpose of the tax assessed for that year that plaintiffs claim a deduction from gross income for a loss allegedly sustained during that year. The payments to Mueller under the contract were made during the year 1950. Those payments represented the purchase price of machinery purchased by G & R from Mueller and for the expenses and services of an expert to be furnished by Mueller to G & R to in-

stall and operate the equipment. It is conceded that G & R never received from Mueller either a return of the $5,000 aggregate paid or anything of value in exchange therefor, and that consequently, plaintiffs, through G & R, have a chose in action against Mueller for the same amount. This chose in action, by concession of the parties, still had value throughout the year 1952. In exchange for its payment of the $5,000, G & R acquired the right to the merchandise purchased and the services agreed to be rendered or to a return of the amount paid. This right still existed throughout the tax year.

Annexed to the stipulation of facts upon which this case is submitted are copies of correspondence between G & R and Mueller on the one hand and G & R and Eastman Kodak Company on the other. Eastman was the source of a special type of paper for the printing of which the equipment was purchased by G & R from Mueller. On October 7, 1952, G & R wrote Mueller that Eastman had "shelved" for an indefinite period the production of the special paper which G & R would need in connection with the Mueller equipment, and that a survey of G & R's customers had induced the conclusion that the product for which the special paper and equipment was required was not a suitable item for the market in the United States. G & R therefore suggested that Mueller use the machinery purchased, or sell it to someone else, and for the $5,000 advanced, that Mueller ship to G & R a milling machine or a lathe of equivalent value. Under date of February 23, 1953 Mr. Rowe of American Cinefoto Corp. wrote to G & R that there was doubt that Mueller would be able to fulfill his obligation since he had not started work on the machinery which G & R had ordered. On February 25, 1953 G & R wrote Mueller enclosing a copy of G & R's letter of October 7, 1952, and requesting that Mueller give the matter his prompt attention. In reply to the last foregoing letter, Mueller wrote G & R under date of March 10, 1953, acknowledging receipt of the

letter of February 25, and also that of October 7, 1952, and stating that the latter was unanswered because it had not been turned over to Franz Mueller. Mueller then proceeded to explain the delay in the production of the equipment purchased by G & R and suggested that before G & R finally decided to give up the printing project, they contact a Mr. Rosenfeld against the possibility that Eastman might then have resumed manufacturing the paper required. Mueller's letter further states that because he had a complete "setup" for the production of Rotophoto films, he would have no use in his plant for the equipment which G & R had ordered and urged that, if G & R decided not to proceed as originally planned, contact be made with Mr. Rowe of American Cinefoto Corp. who had shown some interest in the matter. Mueller added that he believed that there was a possibility of selling the equipment ordered to someone else in America or in Europe, provided the Rotofoto viewer was placed on the market. Mueller concluded by offering to assist G & R as much as he could. G & R subsequently wrote Mueller under date of May 19, 1953 advising that after talking with Mr. Rowe they had tentatively agreed to attempt Rotofoto production as soon as the equipment was received from Mueller and requested immediate advices as to when "our equipment will be ready for shipment." This last communication renders obvious the persistence or renewal of G & R's intention to treat the contract as effective and to receive the merchandise purchased when shipped (obviously at a date subsequent to the 1952 tax year). G & R's letter of May 19, requesting shipment of the equipment was seconded by Rowe in the latter's letter under date of May 21, 1953, to Mueller, requesting expediting of shipment of the machinery and advising that G & R, Rosenfeld and Rowe were contemplating working together upon the project for which the equipment had been purchased. Under date of May 27, 1953, Mueller, Jr. wrote G & R requesting sample paper strips, data from Lapin Products Inc. of Newark, New Jersey respecting final picture sizes and other particulars respecting the paper to be used with the equipment. Subsequent correspondence extending to a date as late as October 1956 clearly indicates that G & R and Rowe on the one hand and Mueller on the other were negotiating for Mueller's performance of the original contract between it and G & R. Under date of October 4, 1956, Rowe, acting for G & R, wrote Mueller, advising that G & R requested delivery of the machines and recommended prompt action responsive to that request. Demand was therein made for either delivery or full refund of the money paid, with interest.

The foregoing evidence is strongly suggestive of the factual picture presented in H. D. Lee Mercantile Co. v. Commissioner, 10 Cir., 1935, 79 F.2d 391 (on review of a decision of the Board of Tax Appeals). In that case the taxpayer ordered 500,000 yards of cloth from W. for delivery over a period of time at a certain price per yard. A portion of the quantity ordered was delivered and paid for but the taxpayer claimed that the cloth was not up to standard. Further shipments were made and paid for but were ultimately invoiced back to the seller, whose account was charged with the price less interest and expenses. Efforts to adjust the resulting controversy, extending over several months, proved unproductive. Finally, some eight years after the placing of the original order, the taxpayer's claim against the seller was charged off and a deduction claimed for the amount thereof as a business loss for that year (1927). Citing Lewellyn v. Electric Reduction Co., 275 U.S. 243, 48 S.Ct. 63, 72 L.Ed. 262, and Wadsworth Mfg. Co. v. Commissioner, 6 Cir., 44 F.2d 762, the opinion in Lee held that the record failed to disclose either a loss or a worthless debt during the taxable year. The evidence disclosed that the seller was amply able to respond in damages for the breach of contract and the debt was not worthless. Moreover, the record failed to disclose any identifiable event by which to associate the loss with the tax year for which it was

claimed as a deduction. The Court held that before a loss is deductible under the statute it must be an actual loss occurring during the taxable year and that the mere determination to write off the debt or failure to employ existing means of enforcement does not suffice to establish a deductible loss in accordance with the foregoing criterion.

Section 23(e) of the statute here relied upon by the plaintiffs and the Treasury regulations interpretive thereof have been construed by the Supreme Court of the United States in Boehm v. Commissioner, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78. In that case the question related to the deductibility, as a loss for the year 1937, of corporate stock which had become worthless. The Supreme Court affirmed the Tax Court in concluding that the evidence clearly showed that the stock was worthless prior to the tax year, and therefore could not have become worthless during that year. Respecting the section under which the loss was claimed, Mr. Justice Murphy, speaking for the Court, said 326 U.S. at page 292, 66 S.Ct. at page 123:

> "Section 23(e) itself speaks of losses 'sustained during the taxable year.' The regulations in turn refer to losses 'actually sustained during the taxable period,' as fixed by 'identifiable events.' Such unmistakable phraseology compels the conclusion that a loss, to be deductible under § 23(e), must have been sustained *in fact* during the taxable year. And a determination of whether a loss was in fact sustained in a particular year cannot fairly be made by confining the trier of facts to an examination of the taxpayer's beliefs and actions. Such an issue of necessity requires a practical approach, all pertinent facts and circumstances being open to inspection and consideration regardless of their objective or subjective nature. \* \* \* The taxpayer's attitude and conduct are not to be ignored, but to codify them as the decisive factor in every case is to surround the clear language of § 23

> (e) and the Treasury interpretations with an atmosphere of unreality and to impose grave obstacles to efficient tax administration."

See Callan v. Westover, D.C.Cal.1953, 116 F.Supp. 191, 198.

When we apply the foregoing rules to the case at bar it is so clear as to afford no basis of inference to the contrary that, if the so-called "subjective" approach were to be adopted in appraising the evidence, the taxpayer not only did not treat the chose in action substituted for the consideration which it paid under the contract as worthless during the 1952 tax year, but as late as October in the year 1956 still viewed the matter as open to realization of the consummation of the transaction by the completion and shipment of the merchandise purchased. Nor does the suggestion during the course of the correspondence that Mueller endeavor to use the machinery for its own purposes or sell it elsewhere or substitute different machinery as the subject of its shipment to G & R evidence any subjective attitude on the part of G & R indicative of its recognition of a loss during the year 1952. Indeed, the evidence clearly negatives the fact of a loss to the taxpayer during the year for which it was claimed. The practical test for determination of the time of accrual of a deductible loss was expressed by the Supreme Court in Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, in which it was pointed out that the income tax law is concerned only with realized losses as with realized gains, subject to the exception of cases in which losses were so reasonably certain in fact and ascertainable in amount as to justify their deduction before they are absolutely realized. See also Burnet v. Logan, 283 U.S. 404, 413, 51 S.Ct. 550, 75 L.Ed. 1143. However, as the same Court said in Lewellyn, supra, 275 U.S. at page 246, 48 S.Ct. 63, 72 L.Ed. 262, a loss resulting from a buyer's prepayment to a seller who proves to be unreliable is not necessarily sustained, within the meaning of the statute, as soon as the money is paid.

I conclude, therefore, that throughout the year 1952 each of the parties to the contract held out to the other the expectation and intention that the contract would be performed by the seller, and there is no evidence in the stipulation presented that in actuality the purchaser sustained any loss during that year. Because, therefore, the plaintiffs have failed to sustain the burden of proving their right to the deduction claimed for the tax year 1952, the deduction was properly disallowed and the right to refund must be denied. Defendant is therefore entitled to judgment against the plaintiffs for its costs. This opinion shall serve in lieu of the findings of fact and conclusions of law required by Rule 52(a), 28 U.S.C.A. An order may be presented in accordance with the views hereinabove expressed.