JAMES D. McHENRY and CHRISTINE McHENRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McHenry v. Commissioner
Docket No. 1610-76.
United States Tax Court
T.C. Memo 1978-300; 1978 Tax Ct. Memo LEXIS 214; 37 T.C.M. (CCH) 1254; T.C.M. (RIA) 78300; August 1, 1978, Filed *214 Held, amount of petitioners' advances to their corporation determined. Held further, such advances were contributions to capital. Held further, petitioners failed to establish the worthlessness of their investment in 1973. James L. Edgar, for the petitioners. J. Michael Adcock, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1970
$ 4,524.70
1972
731.58
1973
1,053.08
The sole issue is to what extent, if any, petitioners are entitled to a $ 65,000 business bad debt claimed in 1973. Respondent's adjustments in 1970 and 1972 occur as a result of the *215 disallowance of the 1973 business bad debt which eliminated petitioners' net operating loss carryback to 1970 and 1972. FINDINGS OF FACT Some facts were stipulated and are found accordingly. James and Christine McHenry, husband and wife, were residents of Tulsa, Oklahoma, when they filed their 1970 joint and amended returns with the Southwest Internal Revenue Service Center, Austin, Texas; their 1972 and 1973 returns with the District Director of Internal Revenue, Oklahoma City, Oklahoma; and their petition in this case. In 1969, James McHenry (hereinafter petitioner) entered into the metal fabrication business as a sole proprietorship doing business as Quality Fabrication and Sales Company (hereinafter Quality). On or about March 31, 1970, petitioners borrowed $ 25,000 from the Small Business Administration (hereinafter S.B.A.), placing the funds in a business bank account titled James McHenry, d/b/a Quality Fabrication and Sales. On February 12, 1971, petitioner, along with Messrs. Lee and Gruschin, organized Flangco, Inc., which was to operate Quality's business. Flangco, Inc. was never operated as a corporation, however, since Lee and Gruschin failed to provide *216 their portion of the funding. As a result, petitioner continued to operate Quality as a sole proprietorship. On September 24, 1971, petitioner, along with Messrs. Worsham and Miller, organized Flangco Corporation (hereinafter Flangco). Flangco never issued any stock. On June 5, 1972, petitioner received $ 25,000 from a loan with the Model Neighborhood Loan, Inc., which was deposited in Flangco's account on June 9, 1972. This advance was not evidenced by a note. Flangco never paid petitioners any interest. There were no written provisions governing a repayment schedule. Flangco used the money for necessary operating expenses. The advance was not secured. Flangco could not have obtained a $ 25,000 outside loan. Repayment of the $ 25,000 was dependent upon the success of Flangco. On December 27, 1972, petitioners borrowed $ 2,000 from Guaranty National Bank using their 1969 automobile as security. The automobile was driven by Mrs. McHenry and title to it was never transferred from petitioners to Flangco. Petitioners filed a voluntary petition in bankruptcy on September 6, 1973, wherein they discharged most, if not all, of the above debts. Petitioners claimed a $ *217 65,000 business bad debt on their 1973 return comprised of the following purported advances to Flangco: S.B.A. Loan
$ 25,000
Model Neighborhood Loan
25,000
Guaranty Bank Loan
2,000
Various Paid Expenses
13,000
$ 65,000
Respondent disallowed the deduction. OPINION We must determine the extent and character of petitioners' loss arising from Flangco during 1973. Petitioners contend that they are entitled to a 1973 business bad debt deduction of $ 55,243.59 [1] since they loaned this amount to Flangco to protect petitioner's income from the corporation. Respondent contends that petitioners can only substantiate $ 25,000 in advances to Flangco; that this amount was a contribution to capital not a loan; that petitioners have not shown their $ 25,000 interest in Flangco to be worthless in 1973; and that, therefore, petitioners are not entitled to any deduction relative to their Flangco interest in 1973. We agree with respondent. Petitioner testified that he advanced all the borrowed *218 funds set out in our Findings of Fact and his automobile to Flangco.He also testified he wrote personal checks between January 22, 1970 and January 10, 1973, which later benefited Flangco.On the basis of the record before us, we find that petitioners have substantiated only $ 25,000 of these purported advances to Flangco. This represents the $ 25,000 Model Neighborhood loan. The S.B.A. loan was obtained more than a year before Flangco was organized. The loan proceeds were deposited in Quality's bank account. Petitioners offered no credible evidence to establish how much, if any, of the $ 25,000 remained when Flangco was organized. Similarly, petitioners offered no credible evidence to establish: (1) how much, if any, of the $ 2,000 proceeds from their personal loan from Guaranty National Bank was transferred to Flangco; (2) that their automobile which was titled in their names and driven by Mrs. McHenry was ever transferred to Flangco; and (3) whether any of the other various expenditures, mostly predating Flangco's existence, benefited it. The $ 25,000 Model Neighborhood loan was deposited in Flangco's bank account however. Accordingly, we find on the record before us that *219 petitioners have substantiated a $ 25,000 advance to Flangco. Having so determined, we must next decide whether the $ 25,000 advance constituted a loan or a contribution to the capital of Flangco. Whether an asset transfer to a corporation by a shareholder is a contribution to capital or constitutes the basis for the creation of a bona fide debt is a question of fact. Yale Avenue Corp. v. Commissioner,58 T.C. 1062, 1073 (1972). The resolution of this issue depends upon whether the economic realities surrounding the transfer suggest the asset has been put at the risk of the corporate venture, thus representing an equity investment, or has been transferred with reasonable expectations of reimbursement regardless of the success of the corporation. Gilbert v. Commissioner,248 F. 2d 399, 406 (2d Cir. 1957). The burden of proving the reality of the indebtedness is upon the taxpayer. Yale Avenue Corp. v. Commissioner,supra at 1074; Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
On the basis of the record before us, we conclude that petitioners' $ 25,000 *220 advance was, in reality, a contribution of risk capital and did not give rise to a bona fide debt on the part of the corporation. We base this conclusion on the following factors: (1) the advance was not evidenced by any instrument of indebtedness; (2) there were no written provisions between petitioners and Flangco covering repayment provisions and terms; (3) Flangco gave no security for the advance; (4) petitioner testified that the advance was only to be repaid out of corporate profits; (5) petitioner testified that the corporation could not obtain such a loan on its own because it was not a good security risk; (6) petitioner testified the advance was used for the everyday operating needs of the corporation; (7) no stock was ever issued in Flangco; and, finally, (8) petitioners did not produce any corporate records to show the corporation's accounting treatment of the advance. We need not elaborate further. Under these circumstances, we simply cannot find an unconditional obligation on the part of Flangco to repay the advance. Accordingly, we find the advance was a contribution to the capital of Flangco. Finally, having so determined, we must decide whether petitioners have *221 established that this advance was worthless in 1973. A taxpayer owning stock, which is a capital asset, is entitled to a capital loss in the year which the stock becomes wholly worthless. Secs. 165(a), 165(g)(1), 165(g)(2)(A). [2] Worthlessness is a factual question of which petitioners have the burden of proof. Boehm v. Commissioner,326 U.S. 287, 294 (1945); Rule 142(a), Tax Court Rules of Practice and Procedure. We are convinced that, on the record before us, petitioners have failed their burden on this issue. In Morton v. Commissioner,38 B.T.A. 1270, 1278-1279 (1938), affd. 112 F. 2d 320 (7th Cir. 1940), the Board set forth the following standards for determining worthlessness: a loss by reason of the worthlessness of stock must be deducted in the year in which the stock becomes worthless and the loss is sustained, that stock may not be considered as worthless even when having no liquidating value if there is a reasonable hope and expectation that it will become valuable at some future time, and that such hope and expectation may be foreclosed *222 by the happening of certain events such as the bankruptcy, cessation from doing business, or liquidation of the corporation, or the appointment of a receiver for it. Such events are called "identifiable" in that they are likely to be immediately known by everyone having an interest by way of stockholdings or otherwise in the affairs of the corporation; but, regardless of the adjective used to describe them, they are important for tax purposes because they limit or destroy the potential value of stock. The ultimate value of stock, and conversely its worthlessness, will depend not only on its current liquidating value but also on what value it may acquire in the future through the foreseeable operations of the corporation. Both factors of value must be wiped out before we can definitely fix the loss. If the assets of the corporation exceed its liabilities, the stock has a liquidating value. If its assets are less than its liabilities but there is a reasonable hope and expectation that the assets will exceed the liabilities of the corporation in the future, its stock, while having no liquidating value, has a potential value and cannot be said to be worthless. The loss of potential *223 value, if it exists, can be established ordinarily with satisfaction only by some "identifiable event" in the corporation's life which puts an end to such hope and expectation. Thus, in order to establish worthlessness, petitioners must show a relevant identifiable event in Flangco's corporate life which clearly evidences destruction of both the potential and liquidating value of the stock. They have shown neither. They did not make it clear when business operations ceased, if at all; they did not produce corporate records to establish the year of insolvency; and they did not show Flangco dissolved or filed bankruptcy. Accordingly, on the basis of the record before us, we find that petitioners are not entitled to any deduction in 1973 relative to their investment in Flangco. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Petitioners conceded at trial that they could not substantiate a portion of the $ 25,000 S.B.A. loan and, therefore, they claimed a deduction only for $ 55,243.59.↩
2. Statutory references are to the Internal Revenue Code of 1954, as amended.↩