RUBEN H. AND MARIE M. ANDEREGG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ANDEREGG v. COMMISSIONER
Docket No. 681-74.
United States Tax Court
T.C. Memo 1978-509; 1978 Tax Ct. Memo LEXIS 9; 37 T.C.M. (CCH) 1851-90; December 26, 1978, Filed *9 Held: Investment by petitioner in CM Corporation was not worthless in 1963. Heldfurther: Penalty for late filing pursuant to sec. 6651(a), I.R.C. 1954, upheld. Alvin S. Malmon, for the petitioners. James C. Lanning, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax in the amounts of $1,921.76, $1,903.30 and $3,405.03 for the taxable years 1968, 1969, and 1970, respectively. Respondent also determined an addition to tax of $75.16 pursuant to section 6651(a)[1] for the taxable year 1970. After concessions by petitioners, the issue remaining for our decision is whether petitioners have shown that their investment in Circle Motors, Inc., became worthless in 1963. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, along with attached exhibits, are incorporated herein by this reference. Petitioners, husband and wife, resided in Edina, Minnesota at the time of filing their petition herein. Petitioners timely filed their joint Federal income *10 tax returns for the calendar years 1968 and 1969 with the District Director of Internal Revenue, St. Paul, Minnesota. Petitioners' income tax return for the year 1970 was delinquently filed on December 6, 1971, also with the District Director of Internal Revenue, St. Paul, Minnesota. Since Marie M. Anderegg is a party hereto solely by reason of having filed joint income tax returns with her husband for the years in issue, Ruben H. Anderegg alone will hereafter be referred to as the petitioner. Circle Motors, Inc. (hereafter CM) was organized as a corporation under the laws of the State of Minnesota on or about May 6, 1960. It was engaged in the business of selling new and used automobiles in South St. Paul, Minnesota, and commenced business with a total capitalization of $30,000, representing 900 shares of common stock. Petitioner contributed $10,000 cash to CM and received 300 shares of common stock. The remaining 600 shares, held by two other stockholders, were later purchased by petitioner for $20,000. This gave him complete ownership and control of CM, and at all times material herein, petitioner was the sole stockholder of CM during the period of its operation and existence. *11 CM filed its corporate Federal income tax return for the fiscal year ended April 30, 1963, with the District Director of Internal Revenue, St. Paul, Minnesota, on July 16, 1963. On or about May 12, 1960, CM entered into a Dodge direct dealer agreement (passenger car and truck) with Chrysler Motors Corporation (hereafter CMC). This agreement was amended on May 27, 1961, and renewed on March 28, 1962. The agreement dated March 28, 1962 was terminated on March 15, 1963. As of CM's fiscal year-end, April 30, 1963, all fixed assets and merchandise inventories were sold, and CM abandoned the leasehold where it operated its dealership, along with the various improvements it had made thereon. During the period of its Dodge dealership agreement, CM incurred operating losses. Indeed, for its taxable year ended April 30, 1963, it operated at a loss of $113,270.77. As a result, petitioner made additional advances of $101,565.02 to CM which were treated on the books and records of CM as notes or accounts payable. While CM was actively pursuing its Dodge dealership business, petitioner caused to be organized a second corporation under the laws of the State of Minnesota, operating under *12 the name, Circle Auto, Inc. (hereafter CA). On or about August 3, 1962, CA entered into a temporary letter sales agreement with CMC under which CA became one of CMC's authorized dealers on a nonexclusive basis in Bloomington, Minnesota. The letter agreement of August 3, 1962, reflecting a termination date of May 15, 1963, was extended or continued to August 31, 1963 by letter agreement dated June 14, 1963. What petitioner sought through CA was a Dodge direct dealer agreement, and apparently he had an oral agreement with Dodge for the receipt of a franchise. One condition to petitioner's receipt of a franchise in Bloomington was closing of CM's South St. Paul dealership.
As reflected in its books and records for the fiscal year ended April 30, 1963, CM transferred certain equipment and car inventory to CA. CA continued its business arrangement with CMC through August 31, 1963, at its Bloomington, Minnesota, address, 9621 Lundale Avenue S., as reflected on its corporate income tax returns for the fiscal years ended September 30, 1963, and September 30, 1964. Sometime in latter 1963, it became apparent that CMC was not going to give petitioner a Bloomington dealership, in part because *13 of CMC's requirement of him to furnish proper permanent facilities for the dealership. Consequently, on or about June 29, 1964, CM and CA commenced a lawsuit against Chrysler Corporation and CMC. [2] The original complaint, however, did not include petitioner as a plaintiff nor did it allege as its major cause of action breach of the oral agreement to give petitioner a franchise. Rather, the three causes of action in the original complaint may be summarized as follows: (1) discrimination against the plaintiffs by Chrysler by selling vehicles to competitors at lower prices than like vehicles sold to the plaintiffs; (2) a conspiracy by Chrysler to force the plaintiffs out of business so that Chrysler could open its own sales outlet; and (3) violation by Chrysler of an agreement with plaintiffs concerning the supplying of Dodge automobiles to members of the Minnesota Twins baseball team. After defendants filed several responsive pleadings, the complaint was amended to include petitioner as a plaintiff and to allege breach by Chrysler of an oral agreement to grant him a franchise in Bloomington. *14 Additional counts were also filed in the amended complaint on behalf of plaintiffs CM and CA. Petitioner hoped that Chrysler would settle the suit by giving him the Bloomington dealership which he sought. The lawsuit against Chrysler came to trial early in 1971, and on February 16, 1971, the parties entered into a stipulation of dismissal and a general release. On or about that date, Faegre & Benson, attorneys for Chrysler issued a check in settlement of the lawsuit to petitioner, individually, in the amount of $175,000. Of this amount, petitioner retained $22,915.99, with the remainder being used to pay legal, accounting and other expenses of the lawsuit. Petitioner duly filed his Federal income tax return for the calendar year 1963 with the District Director of Internal Revenue, St. Paul, Minnesota. On his 1963 return, petitioner claimed a loss of $131,565.02 resulting from the alleged worthlessness of stock of and notes receivable from CM, of which $10,000 was claimed as an ordinary deduction under section 1244. At that time, CM did not have sufficient assets to satisfy even its trade creditors. However, the District Director's office examined petitioner's 1963 return and *15 disallowed the claimed loss on the grounds that petitioner did not establish the worthlessness of CM stock in 1963. Petitioner, after taking the matter to the Appellate Division of the Internal Revenue Service, paid the deficiency resulting from the disallowance of petitioner's claimed stock loss in 1963. Petitioner duly filed his Federal income tax returns for the calendar years 1964, 1965, 1966, and 1967, deducting in each return a capital loss carryover resulting from the claimed worthless stock loss in 1963. The District Director's office did not examine petitioner's 1964, 1965, 1966 or 1967 income tax returns. In each of the taxable years 1968, 1969, and 1970, the years at issue, petitioner has again claimed a capital loss carryover, stemming from his initial claim for a capital loss deduction on his 1963 return. The District Director of Internal Revenue, St. Paul, Minnesota, in his examination of petitioner's 1968, 1969, and 1970 Federal income tax returns, disallowed the claimed capital loss carry-forward on the grounds that petitioner had not established that his stock and investment in CM was worthless on December 31, 1963, December 31, 1964, or at any time through December *16 31, 1970. ULTIMATE FINDING OF FACT The stock of CM was not worthless prior to the calendar year 1971. OPINION The issue in this case is whether petitioner's investment in CM (as defined in section 165(g)(2)) became wholly worthless during 1963. See sec. 1.165-5, Income Tax Regs. Resolution of this issue depends entirely on the effect an incipient cause of action in favor of CM against Chrysler has on the valuation process. It is respondent's contention that until the corporate claims of CM were settled, it was impossible to determine whether petitioner's investment in CM had become worthless. Petitioner, on the other hand, contends that the claims against Chrysler were primarily his own personal claims (relating to Chrysler's refusal to grant him the new dealership) and had no material value to CM. Thus, the issue here is essentially factual. In Boehm v. Commissioner,326 U.S. 287 (1945), affg. 146 F.2d 553 (2d Cir. 1945), affg. a Memorandum Opinion of this Court, dated October 26, 1943 the Supreme Court stated: [A] determination of whether a loss was in fact sustained in a particular year * * * of necessity requires a practical approach, all pertinent facts and circumstances *17 being open to inspection and consideration regardless of their objective or subjective nature. As this Court said in Lucas v. American Code Co.,280 U.S. 445, 449 [50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010], 'no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test.' The standard for determining the year for deduction of a loss is thus a flexible, practical one, varying according to the circumstances of each case. The taxpayer's attitude and conduct are not to be ignored, but to codify them as the decisive factor in every case is to surround the clear language of § 23(e) and the Treasury interpretations with an atmosphere of unreality and to impose grave obstacles to efficient tax administration. [326 U.S. at 292-293.] Respondent does not dispute the proposition that, with the exception of the lawsuit, CM's liabilities exceeded its assets. However, respondent contends, and we agree, that CM was not in a situation where "the liabilities of a corporation are so greatly in excess of its *18 assets" that there was no need for an "identifiable event" in order to establish worthlessness. Morton v. Commissioner,38 B.T.A. 1270, 1279 (1938), affd. 112 F.2d 320 (7th Cir. 1940).Rather, this is a case in which petitioner must show an "identifiable event" in order to establish worthlessness. U.S. v. White Dental Co.,274 U.S. 398 (1927); section 1.165-1(b), Income Tax Regs.
CM had incurred operating losses ever since entering into a Dodge direct dealer agreement with CMC on May 12, 1960. For its year ended April 30, 1963, CM operated at a loss of $113,270.77. The Dodge dealership agreement was terminated as of March 15, 1963. As of April 30, 1963, all fixed assets and merchandise inventories were sold, and CM abandoned the leasehold where it operated its dealership along with the various improvements it had made thereon. The cumulative effect of these occurrences are such that "would clearly evidence to the person of average intelligence, under the circumstances, that no probability of realization of anything of value from this investment, by sale, liquidation, or otherwise, thereafter existed." Watson v. Commissioner,38 B.T.A. 1026, 1032 (1938); see also Rosing v. Corwin,88 F.2d 415 (2nd Cir. 1937). *19 Thus, we are confident that, apart from the lawsuit, the stock of CM was indeed worthless and that an "identifiable event" had occurred in 1963 such as to warrant a worthless stock deduction in that year. We now must decide whether CM's claims against Chrysler, which ripened into a lawsuit for money damages in 1964, had any material value to CM prior to 1971. If so, we must reject petitioner's contention that his CM stock became worthless in 1963 (or in any other year prior to 1971).We begin by noting that the suit was eventually settled in 1971 with a cash payment by Chrysler of $175,000. This, of course, is highly persuasive evidence that the plaintiff's claims had material value at, and prior to, the inception of the lawsuit. Petitioner contends, however, that the real basis of the lawsuit and the claim for which the cash settlement was eventually received was his personal claim for damages resulting from Chrysler's refusal to grant him the Bloomington dealership, and not any material claims of CM. This argument, supported only by petitioner's self-serving testimony, is not persuasive. The complaint in the lawsuit, as initially filed in 1964, names CM and CA as plaintiffs, *20 and states three causes of action, all of which relate to the business activities of CM and CA during the period of their dealership agreement with Chrysler. Only subsequently was the complaint amended, naming petitioner, individually, as a co-plaintiff, and claiming damages from Chryler's failure to grant the Bloomington dealership. But the same amendment also added additional claims in favor of CM and CA. The stipulation, pursuant to which the lawsuit was settled for $175,000, provided for dismissal of the action by all of the plaintiffs, and it did not enumerate any specific claims for which the $175,000 settlement amount was being paid. One of the attorneys representing Chrysler in the litigation testified in the instant case that there was no breakdown by the defendants of the settlement amount as between the various claims.
Petitioner testified that his primary objective with the lawsuit was to use it as leverage in getting Chrysler to agree to give him the Bloomington franchise. While this may have been petitioner's motivation and intended end result, the fact remains that the suit resulted in a cash settlement for a variety of alleged wrongdoings, including numerous claims *21 by CM. Petitioner's contention that CM's claims were not material and were asserted essentially as a coercive device is not supported anywhere in the record, other than by petitioner's own testimony. We find this testimony unpersuasive, in part because it would require us to believe that the original complaint in the Chrysler lawsuit, which was signed by plaintiff's attorneys, was based on claims then known to be without merit. Thus, in the absence of any evidence other than petitioner's own self-serving testimony, we are unable to accept his contention that the lawsuit against Chrysler had no value to CM. Petitioner relies heavily upon Boehm v. Commissioner,supra, a case very similar in its facts to the instant case. In Boehm, the Supreme Court sustained a finding by this Court that certain stock in a corporation had become worthless, despite the pendency of a lawsuit by the corporation, which lawsuit later resulted in a cash settlement. However, we believe that the Boehm case is distinguishable from the instant case. In Boehm, the taxpayer was attempting to claim a loss in the year that the litigation was concluded -- not, as in the instant case, in an earlier year when the *22 claims were inutero and unsettled. We held against the taxpayer essentially based upon her failure to carry her burden of proof that the claims had sufficient value to infuse potential life into an otherwise hopelessly insolvent corporation. Despite the pendency of the suit, which eventually resulted in a cash settlement (paid to the stockholder plaintiffs, and not to the corporation as a derivative action party), we noted that the liabilities of the corporation, which exceeded $500,000, were so great that it was highly unlikely that the lawsuit could ever have resulted in a sufficient cash recovery to render the corporation solvent and its stock of any value to its owners. The Circuit Court of Appeals and the Supreme Court refused to disturb our essentially factual finding that the stock in question was worthless prior to year that the litigation was concluded. The instant case is distinguishable in that CM apparently did not have significant unpaid liabilities which might have absorbed the lawsuit proceeds. In the instant case, the taxpayer's burden of proof was to establish worthlessness in a taxable year prior to the year of the lawsuit settlement. In Boehm, the taxpayer *23 had to prove the converse -- that the stock was not worthless prior to the year of the settlement. The result in both cases is based largely upon the taxpayer's failure to carry his burden of proof, and since the propositions to be proved in the two respective cases were opposites, our finding in the instant case that the stock was not worthless prior to the lawsuit settlement is not inconsistent with the contrary finding in Boehm.
We have found as an ultimate fact that petitioner's CM stock was not worthless prior to 1971, and, accordingly, we must sustain respondent's disallowance of the capital loss carry-forward deductions in question. As for the addition to tax assessed by respondent under section 6651(a), we have no choice but to hold for respondent. The undisputed evidence shows that petitioner did not file his 1970 Federal income tax return within the period prescribed by law. Petitioner presented no evidence to explain this delinquent filing. Thus, he has failed to meet his burden of proof, and we sustain the determination of respondent. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.↩
2. For convenience the two affiliated defendants will be referred to collectively as "Chrysler."↩