GEORGE E. FEDOR AND HELEN R. FEDOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fedor v. Commissioner
Docket No. 20789-85.
United States Tax Court
T.C. Memo 1986-368; 1986 Tax Ct. Memo LEXIS 241; 52 T.C.M. (CCH) 160; T.C.M. (RIA) 86368; August 11, 1986. *241 The Ohio Department of Liquor Control rejected petitioner-husband's application for renewal of a liquor permit on December 8, 1981. Held: Petitioners' loss was sustained upon rejection of petitioner-husband's application for renewal and not upon expiration of his period for appeal. Therefore, respondent correctly disallowed petitioners' claimed ordinary loss for 1982. Ronald H. Lasko, for the petitioners. John H. Gadon, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined *242 a deficiency in petitioners' 1982 Federal income tax of $14,938. After a concession by the parties, the sole issue for decision is whether petitioners are entitled to a section 165 [1] ordinary loss deduction in 1982 resulting from the rejection of their application for renewal of a liquor permit in 1981. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners George Fedor and Helen Fedor, husband and wife, resided in Lakewood, Ohio, at the time they filed their petition herein. Helen Fedor is a party only because she filed a joint Federal income tax return with her husband for 1982. Therefore, reference to petitioner shall be deemed to refer to petitioner George Fedor. Petitioner was a member of the SS. Cyril & Methodius Church of Lakewood, Ohio (Church) at all times relevant herein. On May 21, 1979, petitioner, Reverend Ondreyka, and Peter Shimrak *243 (Shimrak) formed SS. C & M Haven, Inc. (Haven), a nonprofit corporation with its principal office in Lakewood, Ohio. Haven was formed to construct an apartment complex and related facilities specifically designed to meet the physical, social, and psychological needs of elderly persons. The planned apartment complex was to be maintained and operated in accordance with a regulatory agreement between Haven and the Department of Housing and Urban Development (HUD). HUD was to insure the mortgages necessary for completion of the project. The Church's parish council agreed to sponsor the construction of the apartment complex on the condition that Haven act as owner and mortgagor. Petitioner served without compensation as president and chairman of the board of trustees of Haven during the period at issue. The proposed site of the apartment complex consisted of six lots occupied by four buildings and a municipal parking lot. On December 29, 1978, petitioner executed an option agreement with Michael Jarema (Jarema) for the purchase of one of the improved lots. Construction of the apartment complex was contingent upon petitioner acquiring unencumbered title to Jarema's property. Jarema *244 had leased a portion of the property to Flade, Inc. in 1976 for the purpose of operating a tavern business. The lease was for 5 years, and included an option to renew for an additional 3 years with the right of first refusal on any offer to purchase. Flade, Inc. was owned by Charles Flade (Flade) and the tavern business was named Chuck's Place. Flade had obtained a D-5 liquor permit from the Ohio Department of Liquor Control (ODLC) for the operation of Chuck's Place. Jarema was unable to secure a release from the lease held by Flade, Inc. Consequently, petitioner approached Nicholas Hoty (Hoty) about the possibility of acting as petitioner's agent in purchasing the tavern business, liquor permit, and lease. Hoty owned a real estate company that handled commercial property and was familiar with the administrative aspects of owning and transferring liquor permits. Thus, petitioner hoped that Hoty would be able to operate the tavern business, and ultimately resell the liquor permit. Hoty was interested in furthering the apartment complex and agreed to act as petitioner's agent. On April 12, 1979, Hoty executed an agreement to purchase the tavern business, liquor permit, and lease *245 from Flade, Inc. for $35,000. [2] Pursuant to an agreement between petitioner and Hoty, petitioner was to advance Hoty $28,250 for the purchase and was to sign a note for $5,000 payable to Flade, Inc. [3] The original purchase price was reduced by $1,750 because Hoty waived the sales commission to which he was otherwise entitled. In consideration for agreeing to act as petitioner's agent, Hoty was allowed to operate Chuck's Place for his own account until the tavern business was sold, relocated, or closed. Additionally, Hoty agreed actively to seek a purchaser for the tavern business and liquor permit on the condition that the tavern business be moved from its present location. Chuck's Place would be allowed to remain at its present location only if the planned apartment complex was canceled. *246 Hoty attempted to sell the tavern business and liquor permit for approximately 18 months. Hoty found them difficult to sell because Lakewood had very few locations with adequate parking and the owners of rental real estate objected to having taverns operating on their premises. Additionally, Hoty became a born-again Christian in 1980 and lost interest in owning or operating a tavern himself. On March 31, 1980, Hoty received an offer to purchase the tavern business and liquor permit for $29,000. The offer was contingent upon the purchaser obtaining a lease at the present location for a period of 5 years with an option to renew for an additional 5 years. Petitioner refused the offer because it was necessary to vacate the property for construction of the apartment complex. Hoty received two additional offers for Chuck's Place, but both offers were contingent upon finding a suitable alternative location for the tavern. On May 1, 1980, Hoty requested the ODLC to place the permit in departmental safekeeping. Hoty's request was granted, and the permit was placed in safekeeping effective May 15, 1980. The permit was due to expire on October 1, 1980, but each permit holder was entitled *247 to renewal of his permit unless rejected for good cause. A permit in safekeeping was not entitled to renewal more than once, however, unless a proposed transfer site was under construction or reconstruction. Hoty renewed the permit in 1980, and attempted to renew it again in 1981. By letter dated August 28, 1981, the ODLC notified Hoty that he was not entitled to a second renewal in safekeeping in the absence of a proposed transfer site. Additionally, within 15 days subsequent to August 28, 1981, Hoty was required to file an application for transfer of location with the ODLC. The letter concluded that failure to satisfy the transfer requirements by November 1, 1981 [4], would result in rejection of the renewal application pursuant to statutory requirements. On December 8, 1981, the ODLC rejected Hoty's application for renewal on the grounds that a permit would not be renewed more than once while in safekeeping. The Department concluded that it was without authority to renew the permit, and that good cause for the rejection of the application had been shown. Pursuant to Ohio law, Hoty had 30 days to appeal the Department's decision to the Liquor Control Commission. Hoty made *248 no such appeal, and the $1,500 renewal fee was refunded to him on February 9, 1982. On July 10, 1981, petitioner purchased Jarema's property on behalf of Haven for $76,000. The brick house and garage were subsequently razed and the apartment complex was constructed and named Fedor Manor. In his notice of deficiency dated April 16, 1985, respondent disallowed petitioner's $33,250 ordinary loss, but allowed petitioner a $3,000 capital loss for the expiration of the liquor permit. On May 1, 1986, respondent filed a Motion for Leave to File Amendment to Answer wherein respondent determined that the notice of deficiency incorrectly allowed petitioner a capital loss pursuant to section 165. In his amendment, respondent asserted that the ordinary loss deduction was not allowable because (1) it was not incurred in a trade or business or in a transaction entered into for profit, and (2) it occurred, if at all, in 1981. Respondent's motion to amend his answer was granted *249 subject to an order dated April 28, 1986, granting petitioner's Motion to Shift Burden of Proof to Respondent as to matters raised subsequent to the issuance of the notice of deficiency. OPINION The sole issue for decision is whether petitioner is entitled to a section 165 ordinary loss deduction in 1982 resulting from the rejection in 1981 of his application for renewal of the liquor permit. Respondent's contentions that the loss was sustained in 1981 rather than 1982, and that petitioner lacked the requisite profit motive constitute new matters. Therefore, the burden of proof rests with respondent as to these issues. Rule 142(a). Respondent contends that the loss was sustained at the time petitioner's application for renewal was rejected by the ODLC on December 8, 1981. Petitioner maintains that the loss was sustained at the time his period for appeal to the Liquor Control Commission expired on January 7, 1982. Pursuant to section 165(a), "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Thus, to be deductible under section 165, a loss must be claimed in the taxable year in which it is *250 sustained. This requirement is amplified by the regulations, which provide in pertinent part: A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. * * * [Sec. 1.165-1(d)(1), Income Tax Regs.] See Boehm v. Commissioner,326 U.S. 287, 292-293 (1945); United States v. White Dental Co.,274 U.S. 398, 403 (1927). The determination of whether a loss occurred during the taxable year is one of fact. "Such in issue of necessity requires a practical approach, all pertinent facts and circumstances being open to inspection and consideration * * *." Boehm v. Commissioner,supra at 292. The test is flexible and practical rather than legal. Boehm v. Commissioner,supra at 293; Lucas v. American Code Co.,280 U.S. 445, 449 (1930); Ribas v. Commissioner,54 T.C. 1347 (1970). Based upon the facts *251 before us, we must initially determine when the loss was sustained "as evidenced by closed and completed transactions and as fixed by identifiable events." The safekeeping of liquor permits is controlled by Ohio Rev. Code Ann. section 4303.272 (Page 1982) which provides as follows: A permit held in safekeeping shall not be renewed more than once while so held, unless the building from which the permit was taken for safekeeping or the building to which the permit is to be transferred is under construction or reconstruction * * *. Furthermore, to qualify for a second renewal in safekeeping, the applicant must have on file with the ODLC an application for location transfer. Finally, the applicant must demonstrate that he qualifies for a second renewal no later than 30 days after the expiration date of the liquor permit. Petitioner requested a second renewal in safekeeping in August 1981. On August 28, 1981, petitioner received a letter from the ODLC advising him that he was not entitled to a second renewal in safekeeping. Petitioner failed to contact the ODLC as required in the letter and did not file an application for location transfer. Additionally, *252 petitioner did not have a proposed site under construction or reconstruction by November 1, 1981; hence, petitioner failed to demonstrate by that date that he qualified for a second renewal. Consequently, on December 8, 1981, the ODLC rejected petitioner's second application for renewal of the liquor permit as required by statute. Petitioner's liquor permit expired on October 1, 1981, but remained in effect until the ODLC acted on his application for renewal. Pursuant to Ohio Rev. Code Ann. section 119.06(c) (Page 1982), the ODLC's order rejecting petitioner's application was not effective prior to 15 days after the notice of rejection was mailed. Thus, petitioner's liquor permit had expired and the rejection order was valid and effective no later than December 24, 1981. Petitioner maintains, however, that his loss was sustained in 1982 pursuant to section 1.165-1(d)(2)(i), Income Tax Regs., which provides as follows: If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with *253 respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. * * * As discussed above, before a loss may be claimed as a deduction it must be evidenced by a closed and completed transaction. Boehm v. Commissioner,supra at 292-293; United States v. White Dental Co.,supra at 403. One of the essential inquiries under the "closed transaction" concept has been whether there exists a substantial possibility that the alleged loss could be recouped. See Boehm v. Commissioner,supra at 294-295; Scofield's Estate v. Commissioner,266 F.2d 154, 158 (6th Cir. 1959), affg. in part, revg. in part, and remanding in part 25 T.C. 774 (1956); Ramsay Scarlett & Co. v. Commissioner,61 T.C. 795, 807 (1974), affd. 521 F.2d 786 (4th Cir. 1975). Where a reasonable prospect of recovery has been found to exist, such year was held not to be the proper one in which to claim the loss. Lewellyn v. Electric Reduction Co.,275 U.S. 243, 246-248 (1927); *254 Scofield's Estate v. Commissioner,supra at 159, 163. Petitioner had 30 days from the date of the rejection order to appeal the ODLC's decision to the Liquor Control Commission. In the event that the Liquor Control Commission sustained the ODLC's order, petitioner had the right to appeal the decision to the Court of Common Pleas. Thus, petitioner had both administrative and judicial rights of appeal. As discussed above, however, Ohio Rev. Code Ann. section 4303.272 explicitly requires that, for a second renewal in safekeeping, the building from which the permit was taken or the building to which the permit is to be transferred be under construction or reconstruction. On the facts before us, we do not think that petitioner had a "reasonable prospect of recovery" on either his administrative or judicial appeal. Petitioner had no intention of personally operating the tavern business, and neither the original nor an alternative site was under construction or reconstruction. Furthermore, petitioner did not file a location transfer application with the ODLC as required for a second renewal, nor did petitioner present any evidence to *255 the ODLC suggesting that petitioner qualified for a second renewal. Therefore, the ODLC did not have authority to renew the liquor permit and the renewal application was rejected pursuant to statutory requirements. We hold that respondent has met his burden of proof in demonstrating that the loss was sustained upon the ODLC's valid and effective rejection of petitioner's application for renewal in 1981 and not upon expiration of petitioner's right of appeal in 1982. Having determined that petitioner sustained the loss in 1981, and that petitioner is therefore not entitled to reduct the loss pursuant to section 165(a), we need not reach the issue of whether petitioner purchased the liquor permit with the requisite profit motive. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The tavern business and liquor permit were purchased by Hoty, and thereafter held in Hoty's name, though he was acting as petitioner's agent. Consequently, the Department of Liquor Control communicated directly with Hoty, rather than with petitioner, concerning renewal of the liquor permit. ↩
3. It is unclear from the record exactly when the sale of Chuck's Place and the transfer of the liquor permit occurred, but the parties have stipulated that $28,250 was paid in 1979 and $5,000 was paid in 1980.↩
4. Pursuant to Ohio Rev. Code Ann. sec. 4303.271(C)↩ (Page 1953), the holder of an expired liquor permit has 30 days from the date of expiration to satisfy the requirements for renewal.