T.C. Memo. 2005-191


UNITED STATES TAX COURT


PETER R. GEDDIS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9626-04.          Filed August 4, 2005.


Michael D. Handlos, for petitioner.

Jeremy L. McPherson, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, Judge:  Respondent determined a deficiency in petitioner's 2001 Federal income tax and an addition to tax as follows:

|  | Addition to Tax |
| Deficiency | Under Sec. 6651(a)(1)* |
| $218,289 | $30,739 |

       * Respondent's notice of deficiency also
         determined additions to tax under secs.
         6651(a)(2) and 6654, which additions
         respondent conceded at trial.

The issues for decision are: (1) Whether petitioner for 2001 is entitled to a $192,046 long-term capital loss carryforward from 2000; (2) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to timely file his 2001 Federal income tax return.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner was a resident of Danville, California.

In 1997, petitioner, with Frank Garza, Jr. (Garza), an accountant and aggressive investment adviser, began putting together a proposal to develop in Trieste, Italy, "a fully functioning digital city" (Trieste project). Under the Trieste project, there was to be developed and installed in Trieste, Italy (where Garza's brother-in-law played professional

basketball), a broadband fiber optic network that would provide residents of Trieste with high speed Internet access to financial, cultural, and community information and to other telecommunications services.

The proposed Trieste project involved development of an infrastructure and the software applications necessary to qualify Trieste as a "digital city".

Apparently, the proposed Trieste project was approved by Italian government officials and organizations.  Telcom-Italia, one of Italy's major telecommunications corporations, and IBM-Italy were to be involved in the Trieste project.

In late 1997 and 1998, funds were raised, and various aspects of the Trieste project were begun.  In 1998, meetings and negotiations were held with government leaders and local businessmen and with officials of Telecom-Italia and IBM-Italy. Also, certain construction activities relating to the Trieste project were undertaken.  For example, some of the streets in Trieste, Italy, apparently were dug up in preparation for the installation of fiber optic cable.

Adrical, Inc. (Adrical), a Delaware corporation formed on September 14, 1998, was involved in aspects of the management of the Trieste project.  The record does not reflect who invested in Adrical, who owned the stock of Adrical, who filed the

incorporation papers for Adrical, who the corporate officers of Adrical were, or how much money was invested in Adrical.

In 1998, on a monthly basis, in connection with the Trieste project, petitioner, Garza, other consultants, and interpreters began traveling to Trieste, Italy. In 1999, petitioner made two or three additional trips to Trieste.

In July of 1999, the Trieste project began to collapse apparently due to a lack of funds and to dissension between Garza and other personnel. By the end of July of 1999, petitioner had terminated his involvement in the Trieste project and any further association with Adrical. By the end of 1999, the Trieste project had fully collapsed, and Adrical's involvement in the project was terminated.

In September of 1999, Adrical, for the first time, was registered to conduct business in California. The record herein is unclear as to what California business activity, if any, Adrical proposed to conduct.

On January 7, 2000, Wells Fargo Bank (Wells Fargo) made a $197,050 loan to Peter Geddis, Inc. (PGI), petitioner's wholly-owned corporation which petitioner had incorporated in 1989 in California. Under the terms of this loan, payments of principal and interest were to be paid by PGI by way of monthly withdrawals from PGI's bank account. Petitioner signed the loan agreement between Wells Fargo and PGI as personal guarantor.

In 2000 and 2001, respectively, Wells Fargo withdrew $54,736 and $71,157 from PGI's bank account in repayment of principal due on the $197,050 Wells Fargo loan. The record herein does not indicate whether PGI defaulted on this loan or whether Wells Fargo called upon petitioner to make payments on the PGI loan under his personal guarantee.

On or about June 26, 2001, petitioner and his wife timely filed their joint 2000 Federal income tax return. On their 2000 joint Federal income tax return, petitioner and his wife did not attach a Schedule D, Capital Gains and Losses, and no capital loss for 2000 was claimed thereon.

For 2001, petitioner and his wife did not file a timely Federal income tax return.

On March 5, 2004, respondent mailed a notice of deficiency to petitioner with respect to petitioner's 2001 Federal income tax liability.

On April 2, 2004, after receiving the above notice of deficiency, petitioner and his wife untimely filed a 2001 joint Federal income tax return, on which return petitioner and his wife reported various items of income and claimed various deductions, including the $192,046 long-term capital loss carryover from 2000 at issue herein.

On their 2001 Federal income tax return, petitioner and his wife provided no explanation as to why the $192,046 long-term

capital loss carryover from 2000 was claimed thereon, inasmuch as they had not reported a long-term capital loss on their 2000 joint Federal income tax return.  At trial, petitioner's accountant stated that the $192,046 amount of the claimed 2000 long-term capital loss carryover was not precise and was based on an estimate.

As of the date of the trial, petitioner and his wife have not filed an amended Federal income tax return for 2000, and petitioner and his wife have not otherwise claimed a long-term capital loss for 2000.

## OPINION

Under section 165(g), securities which are capital assets that become worthless during a taxable year are "treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset."  Sec. 165(g)(1).

For purposes of section 165(g), a security is defined as either a share of stock in a corporation, or a right to subscribe for, or to receive, a share of stock in a corporation.  Sec. 165(g)(2).[1]

To qualify for a capital loss deduction under section 165(g), a stock interest in a corporation must be wholly worthless.  Sec. 1.165-5(c), Income Tax Regs.  Whether a stock

---

[1]The definition of security under sec. 165(g)(2) also includes certain debt instruments not relevant to this case.

interest in a corporation is worthless, and the taxable year in which such worthlessness occurs, are questions of fact with respect to which petitioners generally bear the burden of proof. Rule 142(a); Boehm v. Commissioner, 326 U.S. 287, 294 (1945); Welch v. Helvering, 290 U.S. 111, 115 (1933).[2]  Further, taxpayers are expected to maintain adequate records to substantiate claimed losses.  Sec. 6001.

Generally, a stock interest in a corporation will be treated as wholly worthless when the underlying corporation has no liquidation value and no foreseeable value.  Delk v. Commissioner, 113 F.3d 984, 986 (9th Cir. 1997), revg. T.C. Memo. 1995-265; Morton v. Commissioner, 38 B.T.A. 1270, 1278-1279 (1938), affd. 112 F.2d 320 (7th Cir. 1940).  The absence of any foreseeable value ordinarily is established by some identifiable event in the corporation's life.  Delk v. Commissioner, supra at 986; Austin Co. v. Commissioner, 71 T.C. 955, 970 (1979); Morton v. Commissioner, supra at 1279.

Petitioner claims that in July of 1997 he received, through PGI as his nominee, a $200,000 loan from Wells Fargo and that he transferred this $200,000 in loan proceeds to Garza, who in turn transferred the $200,000 to Adrical on petitioner's behalf.

---

[2] Petitioner does not assert that the burden of proof should shift to respondent under sec. 7491.

Petitioner alleges that this transfer gave him a stock interest in Adrical.

Petitioner then claims that the $197,050 Wells Fargo loan proceeds PGI received in 2000 were received by PGI only as his nominee, and that the $197,050 was used by him to refinance, in his own behalf, the previously mentioned 1997 $200,000 Wells Fargo loan.

Based on his alleged stock interest in Adrical and Adrical's alleged worthlessness by the end of 2000, under section 165(g) petitioner claims that in 2000 he incurred an approximate $195,000 long-term capital loss relating to his claimed stock interest in Adrical, giving rise to the $192,046 estimated long-term capital loss carryover claimed on his and his wife's 2001 Federal income tax return.

The evidence herein does not adequately substantiate that petitioner made an investment of any kind in Adrical.

Petitioner did not produce adequate documentation or witnesses to verify what, if anything, he invested in Adrical. Some of the records petitioner did produce are inconsistent with petitioner's explanation for the transactions before us. Twice in his testimony, petitioner acknowledged that he was unsure of the accuracy of some of the records produced.

Various bank records were introduced into evidence, but they were incomplete, lacking proper identification, and missing

pages.  For example, a "Business Lending Agreement" relating to the $197,050 Wells Fargo loan to PGI in 2000, presumably a three-page document, is missing page two, the key page which would appear to have detailed how the $197,050 loan proceeds were disbursed.  Further, the bank records which were produced at trial relate only to the existence and repayment of loans in which petitioner allegedly participated but do not indicate that a transfer was ever made by petitioner to Garza or by Garza to Adrical on petitioner's behalf.

Even if originals of certain of the documents relating to petitioner's alleged stock investment in Adrical were lost, as petitioner contends, we are not satisfied that copies or other relevant documentation from either Wells Fargo, PGI, Garza, or Adrical were unavailable.

The credible evidence does not establish that Garza, on petitioner's behalf, ever contributed any funds to Adrical.  In fact, Adrical was not incorporated until September of 1998, more than a year after the time petitioner allegedly transferred funds to Garza for Garza to invest in Adrical on petitioner's behalf.

Also, petitioner has not offered any corporate or public records corroborating that he had an ownership interest in Adrical.  Without such evidence, the record simply does not

support a finding that petitioner made any investment in Adrical.[3]

Even if petitioner had substantiated that he made an investment in Adrical, in order to claim a worthless security loss under section 165(g), petitioner also had to establish that he received a stock interest in Adrical and that the stock became worthless in 2000.

Petitioner has not presented evidence that establishes that he was a stockholder in Adrical.  At trial, in response to questions from the Court, petitioner acknowledged that he did not receive stock certificates in Adrical, that he did not know his percentage ownership interest in Adrical, that he did not know whether he was an officer of Adrical, and that in hindsight he was not sure that he was a stockholder of Adrical.

Further, petitioner repeatedly testified that Garza was obligated to repay funds petitioner transferred to Garza, suggesting that any such funds constituted a loan to Garza, not a stock investment made by Garza on petitioner's behalf.

---

[3]Petitioner cites <u>Jensen v. Commissioner</u>, T.C. Memo. 1993-393, affd. 72 F.3d 135 (9th Cir. 1995), for the proposition that petitioner is not required to produce evidence that he owned stock in Adrical, Inc.  Petitioner fails to differentiate between a theft loss under sec. 165(e), which was the case in <u>Jensen</u>, and a worthless security loss under sec. 165(g), the latter of which requires affirmative evidence that the loss resulted from a security investment.

Additionally, petitioner has not established that Adrical's stock became worthless in 2000. Petitioner has not offered any evidence of the financial condition of Adrical in 2000. There simply is no evidence before us to support a finding that Adrical had no liquidation value as of the end of 2000.

Petitioner argues that the collapse of the Trieste project is an identifiable event establishing that his investment in Adrical had become worthless. Petitioner, however, has not provided any evidence upon which we can determine that Adrical was rendered worthless as a result of the failed Trieste project. To the contrary, the registration of Adrical in 1999 to do business in California, after termination of the Trieste project, indicates that management of Adrical anticipated activities in California, which might have created future value for Adrical.

Based on petitioner's testimony and the lack of evidence herein, it has not been established that petitioner owned stock in Adrical nor that Adrical stock became worthless in 2000.

Petitioner has not established his entitlement to a section 165(g) capital loss in 2000 nor to the claimed capital loss carryforward in 2001 relating to Adrical.

Section 6651(a)(1) imposes an addition to tax for failure to timely file a Federal income tax return, unless such failure is due to reasonable cause and not to willful neglect. Whether reasonable cause exists to avoid imposition of the addition to

tax involves a question of fact. <u>United States v. Boyle</u>, 469 U.S. 241, 249 n.8 (1985). A pending criminal investigation does not constitute reasonable cause for failing to file a tax return when due. <u>Cooper v. United States</u>, 834 F. Supp. 669, 673 (D. N.J. 1993), affd. 9 F.3d 1539 (3d Cir. 1993).

Under section 7491(c), respondent has the burden of production with respect to the section 6651(a)(1) addition to tax. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001). To meet his burden of production, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the addition to tax. <u>Id.</u> Once respondent meets that burden of production, however, the taxpayer continues to have the burden of proof with regard to whether respondent's determination of the penalty is correct. Rule 142(a); <u>Higbee v. Commissioner</u>, <u>supra.</u>

Respondent has satisfied his burden of production by establishing that petitioner was required to file a tax return for 2001 and that petitioner did not file that return until June of 2004.

Petitioner, at trial acknowledged that he knew that he was required to file his 2001 Federal income tax return despite his involvement in a criminal tax investigation. Petitioner is liable for the section 6651(a)(1) addition to tax.

We have considered all arguments made herein, and, to the extent not addressed, we conclude that they are without merit or are irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.